UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

REGINA ALONSO,                                   CASE NO. 5:23-cv-00091-JA-PRL

    Plaintiff,

v.

GOOGLE LLC, YOUTUBE LLC,
JAMES JACKSON, also known online as
"ONISION," and LUCAS JACKSON,
formerly known online as "LAINEYBOT,"
"LAINEY" and "KAI,"

    Defendants.
_____/

**DEFENDANTS, JAMES JACKSON AND LUCAS JACKSON'S, MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER THESE DEFENDANTS, AND FOR FAILURE TO STATE A CAUSE OF ACTION IF THE COURT DETERMINES THAT IT HAS PERSONAL JURISDICTON OVER THE DEFENDANTS, OR IN THE ALTERNATIVE TO TRANSFER CASE BASED ON <u>FORUM NON CONVENIENS, AND INCORPORATED MEMORANDUM OF LAW</u>**

    Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Defendants, James Jackson ("James") and Lucas Jackson ("Lucas"), by and through their undersigned counsel, respectfully move that the Court dismiss the Plaintiff's case because the Court lacks personal jurisdiction over these Defendants. In the event that the Court determines that it has personal jurisdiction over these Defendants, the Defendants move to dismiss the case under Rule 12(b)(6) because the complaint fails to state valid causes of action against these Defendants. In the event that the Court finds that it does have personal jurisdiction over the Defendants and that there are valid causes

1

of action against them, then the Defendants respectfully move that the Court transfer the case to the Western District of Washington, where both Defendants reside.

In support of this motion, the Defendants would show the following:

## I. Introduction

The Plaintiff, Regina Alonso, is a resident of Florida. *See* ¶ 44 of complaint (Doc. 1). The Defendants, James and Lucas Jackson, are both citizens of Washington State. *See* ¶¶ 46 and 47 of complaint, and affidavits of James and Lucas filed of even date herewith. James was last in the State in Florida in or about 2006 (long before any of the allegations in this suit occurred) when as a member of the United States Air Force, he received specialized combat training in Florida. Lucas was last in the State of Florida as a child on a family vacation. *See* affidavits of James and Lucas. Further, James has never met, spoken with or had a written conversation with the Plaintiff. *See* affidavit of James.

At all material times, the acts the Plaintiff alleges the Defendants committed, were committed, if at all, in the State of Washington.

As will be more fully explained below, in her complaint the Plaintiff alleges no factual allegations that would subject James and Lucas Jackson to personal jurisdiction in this District, or to specifically link any of the alleged unlawful conduct by the Defendants to this District. In fact, the Plaintiff does not even articulate any facts to establish that she is a citizen of Florida and resides within this District. The only statement relating to Plaintiff's residence is in ¶ 44 of Plaintiff's Complaint, which states "Regina is a resident of Florida and is *sui juris*."

## II. Summary of the Plaintiff's Allegations

Many years ago, James Jackson created a YouTube channel and began posting videos that the general public could view on demand. He often used the screenname "Onision." *See* ¶ 8 of complaint (Doc. 1). James's videos were popular and often garnered millions of views. *See* ¶¶ 19 and 20 of complaint.

At some point, because his videos garnered so many views, YouTube "monetized" James's YouTube channel, meaning YouTube began to insert third-party advertisements on James's videos, and to pay James based on its own formula related to the number of viewers who clicked on the advertisements. *See* ¶¶ 21 - 24 of complaint.

The Plaintiff alleges that James used his YouTube channel to form personal relationships with minors, to entice them into sexual conversations and to lure them across state lines for sexual purposes. *See* ¶ 29 of complaint. However, the Plaintiff does not allege that she personally had any such relationship with James, or in fact had any direct contact with James.

The Plaintiff alleges that James and Lucas were married in 2012. *See* ¶ 31 of complaint. At the time, Lucas's first name was "Taylor," although he used the screenname "Laineybot" at times. He later legally changed his name to Lucas.[1]

The Plaintiff further alleges that she was a fan of James's videos, and that led her to contact Lucas, who appeared in some videos as James's spouse. She started communicating with Lucas, and their communications continued for three years. The Plaintiff alleges that some years later, Lucas invited the Plaintiff to visit the Defendants'

---

[1] Lucas was born female, but now identifies as male.

home in Washington State, but the Plaintiff did not make the trip. *See* ¶¶ 38 - 41, 150 – 151 of complaint.

The Plaintiff claims that she started communicating with Lucas, who was then using the screenname Laineybot, in or about 2012, when she was 14 years old. *See* ¶¶ 150 - 153 of complaint.[2]

The Plaintiff then alleges that Lucas, then using the screenname Laineybot, had many online conversations with the Plaintiff of a sexual nature over a period of some years. *See generally,* ¶¶ 154 - 186 of complaint.

The Plaintiff makes no allegations that she ever had a conversation or contact in any way with James.

The Plaintiff alleges four causes of action against Lucas and three causes of action against James, as follows:

| | |
|---|---|
| Count I | Violation of the Trafficking Victims' Protection Reauthorization Act, 18 U.S.C. 1591(A)(1) and 18 U.S.C. 1595 |
| Count II | Benefitting from a Sex Trafficking Venture in Violation of the Trafficking Victims' Protection Reauthorization Act, 18 U.S.C. 1591(A)(2) and 18 U.S.C. 1595 |
| Count III | Civil Remedies for Personal Injuries Related to Possession and Distribution of Child Pornography, 18 U.S.C. 2255 and 18 U.S.C. 2252(A)  -   As to Defendant Lucas only |
| Count IV[3] | Civil Remedies for Personal Injuries Related to Coercion and Enticement, 18 U.S.C. 2255 and 18 U.S.C. 2422 |

---

[2] In ¶ 150, the Plaintiff states that she was 12 years old in 2012, but in ¶ 153 she states that she was 14. Upon information and belief, the latter is correct, because the Plaintiff then states in ¶ 154 that she turned 15 a short time later.
[3] The Fourth cause of action alleged, found on p. 44 of the complaint, is mis-labeled as Count V.

## MEMORANDUM OF LAW

### A. The Court's Long Arm Jurisdiction

`

Our system of justice provides a framework for parties who have been wronged to obtain a remedy, but in what court a party seeks to obtain that remedy matters. First and foremost, the court must have jurisdiction over the parties. If a party chooses a court lacking jurisdiction, then regardless of the wrong suffered, regardless of the damages, that court cannot address the claim, and the case must be dismissed.

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. The Plaintiff alleges that the Defendants violated federal statutes, but she makes no allegations to explain how this Court has personal jurisdiction over them.

Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" Daimler AG v. Bauman, 571 U.S. 117, 125 (2014) (alterations added; citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied, see Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999).

There are two types of personal jurisdiction: specific and general. Madara v. Hall, 916 F.2d 1510, 1516 n.7 (11th Cir. 1996). Specific jurisdiction authorizes a Court to exercise over defendants when the cause of action arises from or relates to a defendant's actions within a state. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11th Cir. 2013). When determining whether a district court's exercise of personal jurisdiction

would offend due process, "[t]he relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); World-Wide Volkswagen Corp. *v.* Woodson, 444 U.S. 286, 291 (1980).

In Ford Motor Co. v. Mont. Eighth Judicial District Court, 141 S.Ct. 1017 (2021), the Supreme Court recently described the parameters of specific jurisdiction, as follows:

> Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home-by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there. Yet even then-because the defendant is not "at home"-the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

Id., at 1024 (internal quotation marks and citations omitted).

General personal jurisdiction arises from a defendant's contacts with the forum state that are unrelated to the litigation. Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct 1868, 1872 nn. 8, 9, 80 L.Ed.2d 404 (1984); Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 857, n. 41 (11th Cir. 1990)

In the instant case, in ¶ 56 of her complaint, the Plaintiff alleges general personal jurisdiction by stating that James and Lucas have "significant contacts with the Middle

District of Florida," but there are no facts stated to support this statement. In fact, as stated in their affidavits filed of even date herewith, James and Lucas make it clear that they have no contacts with Florida that would make them amenable to being sued in this District.

The Supreme Court has held that even maintaining extensive operations within a state is not sufficient to give a court general jurisdiction over a nonresident defendant. *See e.g.,* BNSF Ry. Co. v. Tyrrell, 137 S.Ct. 1549, 1559, 198 L.Ed.3d 36 (2017) (holding that although BNSF operated one of its automotive facilities in Montana, had more than 2,000 Montana employees, and had more than 2,000 miles of Montana railroad tracks, BNSF was not subject to general jurisdiction in Montana); Daimler AG v. Bauman, 571 U.S. 117, 136-39, 187 L.Ed.2d 624 (2014) (holding that California lacked general jurisdiction over defendant although it operated multiple California-based facilities; it was the largest supplier of luxury vehicles in California; and its in-state sales accounted for 2.4% of its total sales); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872 (1984) (holding the court had no personal jurisdiction over foreign corporation that sent officers to forum for a negotiating session; accepted checks drawn from a forum bank; purchased equipment from the forum; and sent personnel to the forum to be trained).

With respect to specific personal jurisdiction, the Plaintiff similarly makes no allegations against James. The Plaintiff never alleges any communications or contact between herself and James. James states in his affidavit that he never had any contact with the Plaintiff. The Plaintiff has failed to allege any facts that would give the Court specific jurisdiction over James.

With respect to Lucas, the Plaintiff makes additional allegations, but they still do not meet the criteria of Florida's Long Arm Statute, § 48.193, Fla.Stat. Beginning at ¶ 150 of her complaint, the Plaintiff describes how she communicated with Lucas. The Plaintiff alleges that as a young teen,[4] she was suicidal. *See* ¶ 150 of complaint. Apparently, she found a video online that James had posted, and this video convinced her not to commit suicide; in a manner of speaking, James's video saved the Plaintiff's life. *See* ¶ 150 of complaint. The Plaintiff then became a fan of James and began to chat online with other fans, including Lucas, who used the screenname Laineybot at the time. *See* ¶¶ 151 - 156 of complaint. The Plaintiff became infatuated with Laineybot. *See* ¶ 163 of complaint.

The Plaintiff chatted online with Lucas (then Laineybot) for two or more years. *See* ¶ 157 of complaint. At no time did they ever meet in person. At some point, the Plaintiff alleges that Lucas invited the Plaintiff to visit his home in Washington State. *See* ¶ 182 of complaint.

We are left to guess which part(s) of § 48.193, Fla.Stat., the Plaintiff alleges applies/apply to Lucas. Section 48.193(1)(a)(6) creates long-arm jurisdiction where an injury occurs in Florida that results from a defendant's business activities in the State. That subsection does not apply here. The Plaintiff alleges that both James and Lucas were engaged in interstate commerce, but there is no explanation as to what was commercial about the communications. *See* ¶ 219 of complaint. Black's Law Dictionary (2d Ed) defines "commerce" as "intercourse by way of trade and traffic between different peoples or states and the citizens or inhabitants thereof, including not only the purchase, sale, and exchange of commodities, but also the instrumentalities and agencies by which

---

[4] Again, Plaintiff alleges that she was 12 years old at this time, but from prior allegations, it appears that she was 14 or 15. From public information gleaned online, it appears that the Plaintiff was born in 1997.

it is promoted and the means and appliances by which it is carried on, and the transportation of persons as well as of goods, both by land and by sea." *Citing* Brennan v. Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719 (1894).

Section 48.193(1)(a)(2), Fla.Stat. permits jurisdiction over a nonresident defendant who commits a tort outside of the state that causes injury inside the state. Licciardello v. Lovelady, 544 F.2d 1280, 1283 (11th Cir. 2008). However, the Plaintiff alleges no facts that demonstrate any purported injury. The gist of the Plaintiff's allegations is that she had ongoing interaction with Lucas through telephone calls and video chats, and Lucas then invited her to visit Lucas in Washington State. There is no connection to Florida whatsoever, other than the fact that the Plaintiff lives here.

### B. Due Process

Even if the Florida long-arm statute is satisfied, the Court still may not exercise jurisdiction over Lucas and James if doing so would violate the Fourteenth Amendment's Due Process Clause. The exercise of jurisdiction over a non-resident must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, *supra.*, 326 U.S. at 316 (1945) (internal quotation omitted).

The Eleventh Circuit has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. Under this test, the Court must examine: (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of

9

personal jurisdiction comports with "traditional notions of fair play and substantial justice." See Louis Vuitton Malletier, S.A., *supra.*, 736 F.3d at 1355 (11th Cir. 2013). In performing this analysis, a court identifies all contacts between a nonresident defendant and a forum state and asks whether, individually or collectively, those contacts satisfy these criteria. Id., at 1357.

### I. Arises Out Of/Relates To

A "tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." Waite v. All Acquisition Corp., 901 F.3d 1307, 1314 (11th Cir. 2018) (alterations adopted; citation omitted). Nothing about Lucas's alleged conduct has anything to do with Florida. The only nexus with Florida is that the Plaintiff alleges she lives in Florida.

### II. Purposeful Availment

Further, it cannot be said that Lucas purposefully availed himself of Florida as the forum state. The Court may answer the purposeful availment question in two ways. The first is the "Effects Test," which is available in intentional tort cases. Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd, 722 F. App'x 870 (11th Cir. 2018) (*citing* Calder v. Jones, 465 U.S. 783 (1984)). That test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated. When considering whether the Defendants aimed their conduct at the forum, the Court must consider more than just their relationship to the plaintiff and the plaintiff's location.

In Walden v. Fiore, 571 U.S. 277 (2014), the Supreme Court explained that the plaintiff cannot be the only link between the defendant and the forum, and that mere injury to a forum resident is not a sufficient connection to the forum. Cf. Volt, LLC v. Volt Lighting Group LLC, 369 F. Supp. 3d. 1241 (M.D. Fla. Feb. 25, 2019) (finding no personal jurisdiction where "nothing that shows VLG's website was viewed by, and confused, a Florida consumer or even targeted a Florida consumer. Additionally, nothing suggests that VLG's limited sales to Florida resulted from the allegedly infringing website, which included no mechanism to effect a purchase.").

### iii. Fair Play

Once the Court finds that minimum contacts exist, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985). The "fair play and substantial justice factor is to be applied sparingly." easyGroup Ltd. v. Skyscanner, Inc., No. 20-20062-CIV, 2020 WL 5500695, at *12 (S.D. Fla. Sept. 11, 2020). This inquiry considers five "fairness factors" to determine whether exercising jurisdiction over a defendant is reasonable: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1276 (11th Cir. 2002).

**FAILURE TO STATE A CAUSE OF ACTION UNDER RULE 12(b)(6), IN THE EVENT THE COURT FINDS THAT IT HAS PERSONAL JURISDICTION OVER JAMES AND LUCAS**

    **I.**    **Counts One and Two fail to state a cause of action under the statutes cited.**

In Counts I and II of her complaint, the Plaintiff alleges that she has a personal claim to recover under the federal Violation of the Trafficking Victims' Protection Reauthorization Act ("TVPRA"), 18 U.S.C. 1591(A)(1). First of all, the Act only applies to activity that involves interstate commerce. As shown above, the Plaintiff does not allege that by inviting her to visit Washington State, the Defendants were engaged in any commercial activity.

In <u>Doe v. Red Roof Inns</u>, 21 F.4th 714 (11th Cir. 2021), the plaintiffs sued Red Roof Inn hotels, a Microtel hotel, a Suburban Extended Stay, as well as a Hampton Inn, naming them as beneficiaries to well-established sex-trafficking ventures to which the plaintiffs were victim. The plaintiffs further alleged that the franchisor companies of these hotels were also liable as beneficiaries, on grounds that they financially benefitted from renting rooms out to the perpetrators when they "knew or should have known" about the trafficking ventures taking place at the venues. Upholding the defendants' motion to dismiss, the Eleventh Circuit ruled that plaintiffs bringing such claims must plausibly allege that they were specifically trafficked at the particular named venue, and further that each named defendant knew or should have known that the plaintiff was specifically trafficked at that venue. ("In short, we hold that, to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had

constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff."). Ultimately, the Red Roof Court held that the defendants' general knowledge of trafficking at the venue to be insufficient under §1595(a). This subsection permits a victim of a violation of the Act to bring a civil action against the perpetrator or whoever knowingly benefits, or attempts or conspires to benefit, <u>financially</u> or by receiving anything of value from participation in a venture that the person knew or should have known violated this Act. There are no plausible allegations in the complaint that James or Lucas benefited financially from any interaction with the Plaintiff.

## II.    Count Four (labeled Count Five) fails to state a cause of action under the statutes cited.

In Count IV (labeled as Count V) of her complaint, the Plaintiff alleges that she has a personal claim to recover under the 18 U.S.C. 2255 and 18 U.S.C 2422. 18 U.S.C. 2422 applies to any person who "knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce . . . to engage in prostitution, or in any sexual activity for which a person can be charged with a criminal offense."

To establish an attempt as a crime, proof is required: (1) that the defendant intended to commit the underlying criminal offense with the requisite *mens rea,* and (2) that the defendant engaged in conduct which constituted a substantial step toward the commission of that crime and which strongly corroborates the defendant's criminal intent. <u>United States v. McDowell</u>, 250 F.3d 1354, 1365 (11th Cir. 2011); <u>United States v. Yost</u>, 479 F.3d 815, 819 (11th Cir. 2007).

Taken in a light most favorable to the Plaintiff, she alleges in her complaint that Lucas invited her to travel to Washington State. The Plaintiff surmises that the purpose of the trip was to induce her to engage in sexual activity, but there are no factual allegations to support this. And once again, with respect to James, the Plaintiff makes no allegations that he had any conversation with her, much less invited her to visit him.

**FORUM NON CONVENIENS**

In <u>Sibaja v. Dow Chemical Company</u>, 757 F.2d 1215 (11th Cir. 1985), the Court stated:

> The doctrine of *forum non conveniens* authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum. The doctrine derives from the court's inherent power, under article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice and oppression. As the Supreme Court observed nearly 100 years ago, "the equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustice, are inherent and equally extensive and efficient." <u>Gumbel v. Pitkin,</u> <u>124 U.S. 131, 144, 8 S.Ct. 379, 383, 31 L.Ed. 374 (1888)</u>. *See also* <u>Pueblo De Taos v. Archuleta,</u> <u>64 F.2d 807, 813 (10th Cir.1933)</u>; 1 J. Moore, J. Lucas, H. Fink, D. Weckstein, & J. Wicker, Moore's Federal Practice ¶ 0.60[6] (2d ed. 1984). *Cf.* <u>Ownbey v. Morgan,</u> <u>256 U.S. 94, 110, 41 S.Ct. 433, 438, 65 L.Ed. 837 (1921)</u> (inherent power of state court).
>
> The doctrine of *forum non conveniens* is but one manifestation of that inherent power. The doctrine addresses "whether the actions brought are vexatious or oppressive or whether the interests of justice require that the trial be had in a more appropriate forum." <u>Koster v. Lumbermens Mutual Casualty Co.,</u> <u>330 U.S. 518, 530, 67 S.Ct. 828, 834-35, 91 L.Ed. 1067 (1947)</u>; *see* <u>Williams v. Green Bay & W.R. Co.,</u> <u>326 U.S. 549, 555-56, 66 S.Ct. 284, 287, 90 L.Ed. 311 (1946)</u>. Under the federal standard, "dismissal

will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981).

The court's inherent power to protect the integrity of its process through *forum non conveniens* is similar to the court's inherent power to punish contempt. Of the latter, the Supreme Court has written:

It is essential to the administration of justice. The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once become possessed of the power. So far as the inferior federal courts are concerned, however, it is not beyond the authority of Congress; but the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative. That it may be regulated within limits not precisely defined may not be doubted.

*Michaelson v. United States,* 266 U.S. 42, 65-66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924). We think this statement applies with equal force to the authority of a federal district court to dismiss an action for want of an appropriate forum.

The Court's interest in controlling its crowded docket also provides a basis for the Court's inherent power to dismiss on grounds of *forum non conveniens:* "the `chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft Co. v. Reyno,* 454 U.S. at 241, 102 S.Ct. at 258 (quoting *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. at 524, 67 S.Ct. at 831-32). "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The *forum non conveniens* doctrine is "designed in part to help courts avoid conducting complex exercises in comparative law," *Piper Aircraft Co.,* 454 U.S. at 251, 102 S.Ct. at 1219*1219 263, an exercise the court below would have to undertake if it litigated this case on the merits.

. . .

The *forum non conveniens* doctrine is a rule of venue, not a rule of decision. The doctrine provides "simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of [the law]." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 507, 67 S.Ct. at 842. In contrast, "rules of decision" are the "substantive" law of the state, the "legal rules

15

> [which] determine the outcome of a litigation." <u>Guaranty Trust Co. v. York,</u> 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945). It is true that a judge-made rule *may* qualify as a rule of decision if it substantially affects the "character or result of a litigation." <u>Hanna v. Plumer,</u> 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965). But the trial court's decision, under the circumstances presented here, whether to exercise its jurisdiction and decide the case was not a decision going to the character and result of the controversy. Rather, it was a decision that occurred before, and completely apart from, any application of state substantive law. A trial court only reaches the state rule of decision, relating to the character and result of the litigation, once it has decided to try the case and determine whether the plaintiff has a valid claim for relief. We hold, accordingly, that the district court's application of the doctrine of *forum non conveniens* in this case did not operate as a state substantive rule of law and thus transgress *Erie*'s constitutional prohibition. (footnote oitted)

<u>Id.</u>, at 1218-19.

The only reason the Plaintiff filed this case in this Court is that she lives in this District. The Defendants, James and Lucas, have no contacts with Florida, and have not availed themselves of Florida's jurisdiction.

In <u>Leon v. Million Air, Inc.</u>, 251 F.3d 1305, 1310-11 (11th Cir. 2001), the Court held that a defendant asking a district court to transfer a case under this doctrine must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."

The Western District of Washington, where James and Lucas are citizens, is certainly an adequate forum, and the Plaintiff, Ms. Alonso, can certainly reinstate this suit there.

Because James and Lucas did not conduct any activities in Florida, there are strong private factors weighing in favor of the suit being litigated where they reside, not where the Plaintiff resides. It is unduly burdensome for the Defendants to defend

themselves in Florida, thousands of miles away from their home. The telephones, computer systems and other devices on which the Plaintiff alleges Lucas communicated with her are all located in Washington State, and any forensic inquiry would have to be conducted there.

In addition, Plaintiff's counsel in this case filed a related case in the Western District of Michigan in early March, 2023 on behalf of a woman named "Sarah." *See* Plaintiff's notice of related action filed in this case on March 3 (Doc. 12). That case is related because "Sarah" makes very similar allegations against the same four Defendants in this case, as the Plaintiff, Ms. Alonso, alleges in this case. In fact, "Sarah" is mentioned throughout the Plaintiff's complaint in this case.  *See e.g.* ¶¶ 187 – 209 of complaint. In the interest of justice and judicial economy, both cases should be handled together by the same Judge, so that court rulings are consistent and the expense of defending these two related cases (including the use of experts) is kept in check. This case was filed before "Sarah" case in Michigan, but it makes no sense to transfer "Sarah's" case to Florida, as there is no connection to Florida, and it makes no sense to transfer this case to Michigan. The logical choice is to consolidate the cases for certain purposes, and to litigate them in Washington State.

**THE COURT SHOULD DISMISS THE COMPLAINT AS A SHOTGUN PLEADING**

In her complaint, the Plaintiff incorporates and adopt "all prior and subsequent paragraphs." *See* ¶¶ 217, 217, 240 and 275 of complaint, respectively. Thus, all allegations in the entire complaint are made part and parcel of each count, and each theory of liability is incorporated into every other theory of liability.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294-95 (11th Cir.2018). They violate Federal Rules of Civil Procedure 8(a)(2) and 10(b), "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Id. (quotations and alterations omitted). One type of shotgun pleading is where a complaint fails to "separate[] into a different count each cause of action or claim for relief." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322-23, n.13 (11th Cir. 2015).

### III. Conclusion

Plaintiff's complaint against Defendant James Jackson and Defendant Lucas Jackson must be dismissed for lack of personal jurisdiction, improper venue and because it fails to state a cause of action. Florida does not have general jurisdiction over the James and Lucas, as outlined above, and Plaintiff did not plead any facts that would subject the Defendants to Florida's long-arm jurisdiction. Even if the Defendants met the requirements of Florida's long-arm jurisdiction, subjecting them to Florida jurisdiction in this case would violate Due Process concerns. This District is not the proper forum and

the case's dismissal or transfer to the Western District of Washington would serve the interests of justice.

### **CERTIFICATION OF CONFERRING WITH OPPOSING COUNSEL**

Pursuant to Local Rule 3.01(g) of the Local Rules for the Middle District of Florida, on April 20, 2023, the undersigned counsel left a telephone message for Plaintiff's counsel, Attorney Haba, and then emailed Attorney Haba, asking if she agreed to the relief requested in this motion. The undersigned counsel received an automated email response stating that Attorney Haba will be out of the office until next week.

### **CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by electronic filing, which automatically serves a copy by email, to all counsel of record.

> Steven H. Meyer, P.A.
> 401 West Fairbanks Avenue
> Suite 100
> Winter Park, FL 32789
> Tel. (407) 289-0803
> Fax (407) 539-2978
> *Attorneys for Defendants*

Dated: April 20, 2023        By: /s/ Steven H. Meyer
                                 Steven H. Meyer
                                 Florida Bar No. 128562
                                 steven@thefirm.legal