## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Ocala Division

REGINA ALONSO,

    Plaintiff,

v.

GOOGLE LLC, YOUTUBE LLC;
JAMES JACKSON, also known online as
"ONISION," and LUCAS JACKSON,
formerly known online as
"LAINEYBOT," "LAINEY" and "KAI,"

    Defendants.

Case No.: 5:23-cv-00091-JA-PRL

## DEFENDANTS YOUTUBE AND GOOGLE'S MOTION
## TO DISMISS PLAINTIFF REGINA ALONSO'S COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

BACKGROUND ................................................................................. 3

    A.    The YouTube Video Service ................................................. 3

    B.    The Jackson Defendants ...................................................... 3

    C.    Plaintiff and Her Claims ..................................................... 4

ARGUMENT ...................................................................................... 7

    I.    PLAINTIFF HAS NO VIABLE CLAIM AGAINST YOUTUBE UNDER § 2255. ................................................................ 7

    A.    Claim Under § 2255 Requires Allegations That The Defendant Violated A Predicate Criminal Statute. ................. 8

        1.    Plaintiff Has Not Alleged That YouTube Violated § 2422 ....................................................... 10

        2.    Plaintiff has Not Alleged That YouTube Violated § 1591(a) ................................................... 11

    B.    Section 230 Bars Plaintiff's Claims Under § 2255. ................15

    II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1595. .............. 18

    A.    Plaintiff Fails to Get Through The FOSTA Gateway Because She Does Not Allege YouTube Violated § 1591 .......................19

    B.    Even Without Regard To FOSTA, Plaintiff Fails to State a Claim Against YouTube Under § 1595. ...................................21

CONCLUSION ................................................................................. 25

## <u>INTRODUCTION</u>

Plaintiff offers troubling allegations against Defendants James Jackson ("Onision") and Lucas Jackson ("Lainey") (collectively "the Jacksons" or "Jackson Defendants"). She alleges that as a minor she was "groomed" by the Jacksons, who solicited nude photographs from her and tried (unsuccessfully) to entice her to visit them in Washington State. This may well give Plaintiff a claim against the Jackson Defendants. But Plaintiff has also sued Google LLC and YouTube, LLC (collectively, "YouTube"). And as to YouTube, her Complaint is entirely deficient and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Plaintiff does not allege that YouTube was involved in the Jacksons' grooming efforts or that it knew anything about those efforts. Instead, Plaintiff seeks to hold YouTube liable because it gave Onision a platform—not for sex trafficking but for generally posting videos about "teenage concerns." Like many popular YouTube creators, Onision's channel was monetized—*i.e.*, YouTube paid him a portion of the advertising revenue attributable to his videos. Plaintiff does not claim that any of those videos were unlawful or part of any sex-trafficking operation. Nor does she allege that she ever communicated with the Jacksons through YouTube or that the Jacksons used YouTube to upload any content (much less inappropriate content) relating to her. In short, according to the Complaint, YouTube's only purported link to Plaintiff's experiences with the Jacksons is that she first learned of Onision because he operated a well-known

YouTube channel. As a matter of law, such allegations fail to state any viable cause of action against YouTube.

First, Plaintiff's claims under 18 U.S.C. § 2255 (Count IV, which is based on alleged violation of 18 U.S.C. § 1591(a); and Count V, which is based on an alleged violation of 18 U.S.C. § 2422) fail because Plaintiff seeks to hold YouTube vicariously liable for the Jackson Defendants' actions. But the private right of action created by § 2255 does not allow secondary liability, and Plaintiff's allegations do not come close to suggesting that YouTube itself violated § 1591 (by trafficking Plaintiff or "knowingly assisting, supporting, or facilitating" the Jacksons' alleged trafficking effort) or § 2422 (by knowingly persuading Plaintiff to engage in illegal sexual activity). Moreover, any claim under § 2255 is barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("§ 230"), because it seeks to hold YouTube liable for publishing (or failing to remove) content created by the Jacksons.

Plaintiff's claim under 18 U.S.C. § 1595, which is similarly predicated on an alleged violation of § 1591 (Count II), fares no better. While certain § 1595 claims against online services are carved out of § 230, that is so only where the service provider itself committed a criminal violation of § 1591, which Plaintiff has not alleged. Moreover, even without regard to § 230, under the controlling decision in *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), Plaintiff has not pleaded a claim under § 1595 because she makes no plausible allegation that YouTube knowingly benefited from taking part in a sex trafficking enterprise that

victimized her and that YouTube knew or should have known that the Jackson Defendants' actions regarding her violated the sex trafficking statute.

YouTube sympathizes with Plaintiff and takes no position on whether she can pursue her case against the Jackson Defendants. But her claims against YouTube fail as a matter of law.

## BACKGROUND

### A.    The YouTube Video Service

Google owns and operates YouTube, an online video service with billions of users and millions of user-created "channels" offering a vast array of video content. Compl. (Dkt. 1) ¶¶ 9-11. YouTube users can create and post videos to their channels, which other users can view. Users are not allowed to create a regular YouTube account—and thus to upload videos or post comments on others' videos—until they are 13. Declaration of Nathan Berman ("Decl.") Ex. A (Terms of Service) at 3.[1]

### B.    The Jackson Defendants

James Jackson, also referred to as "Onision," is a well-known YouTube content creator. Compl. ¶¶ 14-15, 19-21, 96-97, 105-107. He was at one time part of the YouTube Partner Program ("YPP"), which allowed him to receive a share of advertising revenue associated with videos he uploaded to the service. *Id.* ¶¶ 21-

---

[1] YouTube's Terms of Service are cited extensively in the Complaint (¶¶ 90, 120, 234, 263, 284) and thus are incorporated by reference. *See, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

28, 109.[2] Throughout this time, Onision had maintained numerous separate forums—not on YouTube—for communicating with his fans and other members of the public; these are referred to in the Complaint as "Onision Forums." *Id.* ¶¶ 132-33, 141-47. YouTube had no alleged role in hosting or supervising these Onision Forums; they "were overseen by Onision and Lainey." *Id.* ¶ 137. It was there (not on YouTube) that fans could message Onision or his spouse in hope of a response. *See id.* ¶¶ 37, 133-34.

### C.   Plaintiff and Her Claims

Plaintiff Regina Alonso's claims arise from efforts that the Jackson Defendants allegedly made to "groom" her when she was a minor. These claims arise primarily from Plaintiff's communications with Lainey. None of these communications or alleged grooming activity took place on YouTube. Instead, according to the Complaint, it happened instead on Instagram (Compl. ¶ 153), "the Onision Forums" (¶¶ 37, 159), Skype (¶ 177), Twitter (¶¶ 173-74, 205), Apple's Messages app (¶ 174 screenshot), a group chat on the app Kik (¶ 189), and "a group chat called 'The Three Musketeers'" (¶ 198). Thus, while the Complaint includes various screenshots showing messages between Plaintiff and the Jackson Defendants, those screenshots all show communications on online services *other* than YouTube. *See, e.g., id.* ¶ 122 (Facebook)); ¶¶ 126, 173-174, 201, 205 (Twitter); *id.* ¶ 153 (Instagram).

---

[2] The standard YPP contract, referred to and fairly incorporated in the Complaint (¶¶ 22, 76, 93), is attached as Exhibit B to the Declaration of Nathan Berman.

As to YouTube, Plaintiff alleges only that she first became aware of Onision in 2012 via YouTube when she came across an anti-suicide video he posted. She alleges that at that time she felt a "deep connection" with him based on that video and others that she watched on his YouTube channel. *Id.* ¶¶ 150-51. There is no suggestion that any of these videos were objectionable or intended as part of some sex-trafficking effort. Plaintiff does not allege that Lainey posted any content on YouTube that related to the events at issue in this case. Moreover, Plaintiff does not allege to have had any communications with either of the Jacksons through YouTube. Instead, the Complaint indicates that Plaintiff first reached out to the Jacksons "through the Onision forums" (¶ 37) or via Instagram (¶ 153). In 2012, Plaintiff "began speaking with Lainey" (¶ 153), which became a "daily" occurrence (¶ 156), apparently via "frequent[]" video "Skype calls" (¶ 177).

By 2014, Lainey allegedly told Alonso "I'm in love [with] you" via Twitter, and in 2015 she tweeted she was "sending [R]egina [Alonso] nudes." *Id.* ¶ 174. Alonso also allegedly sent photographs of her body to Lainey, at Lainey's "demand[]," via a private messaging app. *Id.* ¶¶ 178-80. Through these non-YouTube communications, Lainey allegedly attempted to lure Plaintiff across state lines to engage in sexual acts, but Alonso ultimately never traveled to the Jacksons' home in Washington. *Id.* ¶¶ 41, 182-86.

The Complaint alleges almost nothing to link the Jacksons' alleged grooming activity to YouTube. Plaintiff claims that "Onision used his fame and platform to objectify children, to form relationships with underage girls, to entice

5

them, [and to] groom them" (Compl. ¶ 29) but does not include any factual allegations suggesting that such enticement of minors occurred on YouTube. *Cf. id.* ¶¶ 14-21, 36-37. Nor does Plaintiff allege that YouTube encouraged, took part in, or benefited from Onision's off-platform grooming efforts. Instead, she generally alleges that "YouTube was receiving value and profit-sharing with Onision on … content" that he posted on his YouTube channel. *Id.* ¶ 36. But the Complaint does not identify any such content that depicted or related to Plaintiff, or that was intended to lure her to engage in sexual activity. Plaintiff certainly does not allege that the Jacksons ever posted any CSAM on YouTube, whether relating to Plaintiff or anyone else. None of the handful of YouTube videos referenced in the complaint (such as the viral hit "Banana Song") are alleged to be unlawful. *E.g.*, *id.* ¶¶ 16-17, 19, 105-107, 111. And Plaintiff does not suggest there was anything improper about the anti-suicide video or any of the other videos from Onision's YouTube channel that she claims to have watched. *Id.* ¶¶ 150-51; *accord id.* ¶¶ 20, 107 (noting that "Onision rose in popularity because he was commenting on and doing skits portraying other YouTuber[s]").

Nevertheless, Plaintiff has sued not just the Jackson Defendants but YouTube, which she faults for giving a platform to Onision. Compl. ¶¶ 14-21, 35-37, 109-110, 120-121, 211-216. Plaintiff alleges that YouTube was generally on notice of his offensive videos about women (¶¶ 111-118)—though, again, none of those had anything to do with Plaintiff or sex trafficking—and claims generally that by not deplatforming Onision, YouTube "enable[d] … his harmful and

6

volatile content" (¶ 121). But the Complaint does not allege that YouTube played any role in the conduct by the Jacksons that was allegedly criminal. Nor does Plaintiff allege that YouTube had any knowledge of the Jacksons' purported efforts to groom her or of any communications between them.

As to YouTube, the Complaint asserts: (1) a claim under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA") for benefitting from a sex trafficking venture in violation of 18 U.S.C. § 1591(a); and (2) claims under 18 U.S.C. § 2255 for purported sex trafficking in violation of 18 U.S.C. § 1591(a) (Count IV) and for enticement under 18 U.S.C. § 2422 (Count V).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### I.   PLAINTIFF HAS NO VIABLE CLAIM AGAINST YOUTUBE UNDER § 2255.

Plaintiff's claims against YouTube under § 2255 are predicated on alleged violations of two different federal criminal statutes: (1) 18 U.S.C. § 1591(a) (Count IV); and (2) 18 U.S.C. § 2422 (Count V). Both fail.

## A.   A Claim Under § 2255 Requires Allegations That The Defendant Violated A Predicate Criminal Statute.

Section 2255 authorizes victims of certain crimes relating to child pornography to bring civil claims and recover damages. 18 U.S.C. § 2255(a). It is well settled that § 2255 does not provide for vicarious or other forms of secondary liability. *See, e.g.*, *Doe v. City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33-34 (S.D. W. Va. Aug. 22, 2022)), *appeal docketed*, No. 22-2025 (4th Cir. Sept. 29, 2022) ("the Court finds that [] Congress did not intend to permit a theory of vicarious liability under § 2255"); *Upton v. Vicknair*, 2021 U.S. Dist. LEXIS 118756, at *13 (E.D. La. June 25, 2021) ("a claim under § 2255 is limited to a defendant [who] committed the acts described in any of the listed offenses") (cleaned up); *Doe v. Hansen*, 2018 U.S. Dist. LEXIS 81453, at *14, (E.D. Mo. May 15, 2018), *aff'd*,  920 F.3d 1184 (8th Cir. 2019) ("the civil remedy provision of [§ 2255] does not permit claims for secondary or vicarious liability"); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281-82 (D. Conn. 2013) ("§ 2255 does not provide for secondary liability").

This is supported by the statute's legislative history (*e.g.*, *Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *32-33), and by the rule that courts will not read federal statutes to allow secondary liability without clear intent from Congress. *See Jean-Charles*, 937 F. Supp. 2d at 281 ("the lack of any reference to secondary liability in § 2255 is fatal to the plaintiffs' position"); *Hansen*, 2018 U.S. Dist. LEXIS 81453, at *30-31 (same); *accord Cent. Bank, N.A. v. First*

*Interstate Bank, N.A.*, 511 U.S. 164, 182 (1994) ("when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors"); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) ("statutory silence on the subject of secondary liability means there is none").

This defeats Plaintiff's claims against YouTube based on § 2255. Plaintiff's theory—that YouTube is liable because it is in an "agency and/or profit-sharing relationship" with Onision (Compl. ¶¶ 1, 22)—is precisely the kind of vicarious liability that the statute does not allow. *See supra*.[3] Instead, to pursue a claim under § 2255, Plaintiff would have to allege that YouTube itself "violated at least one of the criminal statutes listed in Section 2255." *Singleton v. Clash*, 951 F. Supp. 2d 578, 584 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 44 (2d Cir. 2014) (cleaned up). Plaintiff's claims are premised on two such statutes; but in neither case does the Complaint come close to alleging that YouTube's conduct amounted to a criminal violation of those laws.

---

[3] Even if agency liability were a viable theory in this case, Plaintiff fails to plausibly allege that the Jackson Defendants were acting as YouTube agents. Nothing in the YPP agreement creates an agency relationship between YouTube and content creators, and the Complaint's bare (and equivocal) allegation does not change that. See, e.g., Ratha v. Phatthana Seafood Co., 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017) (an "arms-length commercial relationship ... does not create an agency relationship") (cleaned up), aff'd, 26 F.4th 1029 (9th Cir. 2022). Moreover, Plaintiff does not (and could not) allege that Onision's purported off-platform sexual misconduct was within the scope of any such agency. See, e.g., DSPT Int'l, Inc. v. Nahum, 2007 U.S. Dist. LEXIS 101988, at *8 (C.D. Cal. Aug. 14, 2007) ("principals are only liable for the torts of their agents committed within the scope of their agency") (cleaned up).

      1.     <u>Plaintiff Has Not Alleged That YouTube Violated § 2422.</u>

Section 2422 creates criminal liability for those who "knowingly persuade[], induce[], entice[], or coerce[]" a person in connection with "prostitution" or "any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. § 2422(a) & (b). Subsection (a) forbids knowingly persuading, inducing, enticing, or coercing "any individual to travel in interstate … commerce … to engage in" criminal sexual activity. Subsection (b) does not require inducement to travel, but requires that the affected person "has not attained the age of 18 years." Compl. ¶ 281 (quoting both subsections). Plaintiff alleges this statute was violated when the Jackson Defendants "used … grooming to lure, persuade, induce, entice, and/or coerce Plaintiff" to cross state lines "for the purpose of engaging in sex acts with her while she was a minor." *Id.* ¶ 283.

But Plaintiff makes no allegation that YouTube did anything to try to induce her to travel to Washington to engage in criminal sexual activity. Nor could she. Instead, Plaintiff's only effort to link YouTube to any purported violation of § 2422 is that YouTube supposedly was "notified and had full knowledge that Onision was using [his] platform to groom, lure, persuade, induce, entice, or coerce children" but that YouTube "continued to profit-share with him," Compl. ¶ 284. That simply does not allege a violation by YouTube of § 2422, much less one that relates to Plaintiff.

Plaintiff's allegations further fall short because the Complaint does not offer any plausible allegation that YouTube knew about the Jacksons' efforts to persuade Plaintiff to travel to Washington, and certainly not that it knew that the Jacksons intended for her to engage in sexual activity in violation of § 2422. *See United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003) (§ 2422 "ensures that only those who 'knowingly' engage in the illegal conduct are subject to prosecution"). Not a single fact is alleged that supports such a claim. For example, the vague allegation that "people on YouTube were not comfortable" when an underage girl moved into the Jacksons' house, says nothing about what YouTube knew—and relates to events that happened to a *different person* and took place *after* the allegations related to Plaintiff. Compl. ¶¶ 208, 210.

### 2.  Plaintiff has Not Alleged That YouTube Violated § 1591(a).

For similar reasons, Plaintiff cannot state a § 2255 claim against YouTube based on § 1591(a). As relevant here, that statute imposes criminal liability on anyone who "knowingly … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" knowing or in reckless disregard of the fact that "the person has not attained the age of 18 years and will be caused to engage in a *commercial sex act*." 18 U.S.C. § 1591(a)(1-2). The beneficiary liability provision of § 1591 creates liability where a defendant (1) "knowingly" "benefits" (2) from "participation in a venture" (which § 1591 defines as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)"); while (3) knowing or in reckless disregard of the fact that "the

person" who was trafficked in violation of § 1591(a)(1) was under 18 and "will be caused to engage in a commercial sex act." *Id.* § 1591(a)(2).

To "hold a defendant criminally liable as a beneficiary of sex trafficking, the defendant must have actually 'engaged in some aspect of the sex trafficking.'" *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)). "[C]ourts interpret 18 U.S.C. § 1591 to require actual knowledge and overt participation in a sex trafficking venture by the ICS provider—generalized knowledge without active participation is insufficient." *M.H. v. Omegle.com, LLC*, 2022 U.S. Dist. LEXIS 4543, at *8 (M.D. Fla. Jan. 10, 2022); *accord Doe v. Kik Interactive, Inc.,* 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) ("section 1591 requires knowing and active participation in sex trafficking by the defendants"); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("some participation in the sex trafficking act itself must be shown").

Under § 1591, therefore, "[m]ere association with sex traffickers" is not enough, *Reddit*, 51 F.4th at 1145, nor is alleging an ongoing "business relationship" between the defendant and a sex trafficker. *Doe #1 v. Twitter, Inc.*, 2023 U.S. App. LEXIS 10808, at *5 (9th Cir. May 3, 2023) ("*Reddit* ... requires a more active degree of 'participation in the venture' than a 'continuous business relationship' between a platform and its users.'"). Instead, the beneficiary defendant must actively and knowingly support the criminal trafficking violation and additionally (in the case of a minor victim) must know that the victim "has

12

not attained the age of 18" and would be caused to be "engage[d] in a commercial sex act." *Reddit*, 51 F.4th at 1145 ("establishing criminal liability requires that a defendant knowingly benefit from knowingly participating in child sex trafficking").

The Complaint here offers no factual allegations that remotely support such a claim against YouTube. First, Plaintiff nowhere alleges that YouTube actually participated in the purported trafficking activity involving her and the Jacksons—much less did so knowingly. As discussed, the only alleged link between YouTube and Plaintiff's "grooming" is that YouTube allowed Onision to post videos on its platform—though ***not*** videos related to Plaintiff or intended to help traffic her (*see* Compl. ¶ 111)—and that those videos attracted an audience to Jackson (¶¶ 16-17, 19-20, 105-107), including Plaintiff (¶¶ 38, 150-151), who reached out to him or Lainey through separate channels not hosted by YouTube ( ¶¶ 37, 153). Plaintiff also alleges that Onision received some of the advertising revenue from videos he posted—but again, videos not alleged to be unlawful and not about Plaintiff or involved in her alleged attempted trafficking. *Id.* ¶¶ 28, 36.

Simply put, none of the communications between Plaintiff and the Jacksons that allegedly culminated in the Jacksons' failed effort to bring her to Washington occurred through YouTube. Compl. ¶¶ 153, 177, 173-74, 189, 205. Nor were the images that Plaintiff sent the Jacksons transmitted via YouTube. *Id.* ¶¶ 174-80. Even taking the allegations in the Complaint as true, therefore, YouTube had no meaningful connection to the Jackson Defendants' alleged

efforts to "groom" Plaintiff. There is no plausible allegation that YouTube "assist[ed], support[ed], or facilitat[ed]" the Jacksons' alleged violation of § 1591(a)(1), *i.e.,* that YouTube participated in Plaintiff's alleged trafficking.

Nor does the Complaint allege that any assistance YouTube may have provided to the Jacksons was done *knowing* that they were engaged in sex trafficking. *See, e.g.*, *Afyare*, 632 F. App'x at 285 ("mere membership" in a venture is insufficient if defendant is "ignorant of the venture's sex trafficking activities"). Plaintiff does not allege that YouTube was aware of any of her communications with the Jacksons, much less of their efforts to lure her to Washington. The most that Plaintiff alleges is that "YouTube was notified multiple times that Onision was harming young people with his platform." Compl. ¶ 234. That seems to refer to Onision posting "offensive video[s]" (¶ 118) "targeting teen users and their insecurities" (¶ 111). But that is not sex trafficking, and it does not violate § 1591. Nor does this allegation concern Plaintiff, much less suggest that YouTube knew that the Jacksons were making efforts to harm her. That the Complaint must resort to vague formulations about generic "harm" to "young people" underscores that she has not made the required allegation that YouTube knew that the Jacksons were attempting to recruit or entice Plaintiff (or anyone else) as a part of some sex trafficking scheme.

Apart from all that, § 1591 further requires that the defendant know or recklessly disregard that the trafficking victim was under 18 and "will be caused to engage in a commercial sex act." 18 U.S.C. 1591(a). Plaintiff offers no allegation

that YouTube had such knowledge. As discussed, she does not allege that YouTube knew that Alonso was communicating with the Jacksons—much less knew that the Jacksons were attempting to engage her in a sex act for which she would give or receive something of value. *Id.* § 1591(e)(3).

In short, the Complaint does not come close to stating a claim that YouTube violated the beneficiary provisions of § 1591. Courts have repeatedly dismissed such claims against online service providers based on far more substantial allegations. *See, e.g.*, *Reddit*, 51 F.4th at 1139-40, 1145 (rejecting allegations that Reddit violated § 1591 by allowing the sale of advertising on pages featuring child pornography and failing to remove such material "even when users report it"; such allegations suggested merely that Reddit had "'turned a blind eye' to … content posted on its platform"—"not that it actively participated in sex trafficking"); *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 642-43 (N.D. Ill. 2022) (Salesforce did not violate § 1591 even when it provided support to Backpage, a website used to post sex trafficking advertisements depicting plaintiff); *Kik*, 482 F. Supp. 3d at 1251 (messaging platform did not violate § 1591 when users used the platform to solicit sexual activity with minors and the platform had general knowledge that sex trafficking incidents were occurring).

### B.    Section 230 Bars Plaintiff's Claims Under § 2255.

While they fail of their own accord, Plaintiff's § 2255 claims are also barred by § 230. Section 230(c)(1) "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a

third-party user of the service."' *Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Section 230 applies where (1) the defendant is a "provider … of an interactive computer service"; (2) the allegedly harmful content at issue was "provided by another information content provider," and not the defendant; and (3) the claim seeks to hold the defendant liable as a "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1); *see also Almeida*, 456 F.3d at 1321; *Kik*, 482 F. Supp. 3d at 1248; *M.H.*, 2022 U.S. Dist. LEXIS 4543, at *15.[4]

Here, it is indisputable that "YouTube is an 'interactive computer service,'" *In re BitConnect Sec. Litig.*, 2019 U.S. Dist. LEXIS 231976, at *36 (S.D. Fla. Aug. 23, 2019), and that all of the information at issue (including all the material posted by the Jackson Defendants) was created and provided by third-parties, not by YouTube. Yet Plaintiff seeks to hold YouTube liable as a publisher of that third-party content. Her claims are premised on the idea that YouTube should have removed or made less prominent Onision's content or terminated his channel because it was offensive yet "appealed to [Alonso's] age group." Compl. ¶ 16; *see also id.* ¶¶ 17-18, 29, 35, 37, 111, 120, 123, 263, 284. Plaintiff also alleges

---

[4] Where, as here, the allegations in the complaint establish all the relevant information to determine the application of § 230, courts can and should resolve the issue on a motion to dismiss. *See Gonzalez v. Google LLC*, 2 F.4th 871, 890 n.8 (9th Cir. 2021), *cert. granted*, 143 S. Ct. 80 (2022); *e.g.*, *Mezey v. Twitter, Inc.,* 2018 U.S. Dist. LEXIS 121775 (S.D. Fla. July 19, 2018); *cf. Jones v. Dirty World*, 755 F.3d 398, 417 (6th Cir. 2014) (affirming application of § 230 of summary judgment but explaining that "[g]iven the role that the CDA plays in an open and robust internet by preventing the speech-chilling threat of the heckler's veto, we point out that determinations of immunity under the CDA should be resolved at an earlier stage of litigation").

that YouTube should have prevented Onision from monetizing the videos he posted on YouTube. *Id.* ¶¶ 22, 35-36, 114, 121, 263, 284.

Imposing such liability for publishing decisions regarding third-party content is the heart of what § 230(c)(1) prohibits. *See, e.g., Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("the very essence of publishing is making the decision whether to print or retract a given piece of content"); *Zeran*, 129 F.3d at 330 (§ 230 protects against liability for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content"); *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (no liability under § 230 for "decisions relating to the monitoring, screening, and deletion of content"); *Fair Hous. Council v. Roommates.com*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008) ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"); *M.H.,* 2022 U.S. Dist. LEXIS 4543, at *11 (§ 230 bars claim that a service provider "should have screened or filtered information provided by their users").

Courts thus have consistently applied § 230 to bar similar claims that online service providers are liable for supporting sex trafficking (or similar offenses) by allowing the posting of (or failing to remove) third-party content that allegedly helped facilitate such misconduct. *See M.H.,* 2022 U.S. Dist. LEXIS 4543, at *12-14 (§ 230 barred claim "that Omegle created a forum that harbored, enticed, and solicited child sex trafficking" and related claims that "seek to

redirect liability onto Omegle for the ultimate actions of their users."); *Kik*, 482 F. Supp. 3d at 1249 (claim that defendants "fail[ed] to enact policies that would have prevented her from being trafficked by fellow Kik users" is "exactly the type of claim that CDA immunity bars"); *Doe #1*, 2023 U.S. App. LEXIS 10808, at *6 ("the district court correctly ruled that section 230 precluded Plaintiffs from stating a viable claim for possession and distribution of child pornography"); *Doe v. Reddit, Inc.*, 2021 U.S. Dist. LEXIS 129876, at *1, 8-11 (C.D. Cal. July 12, 2021) (§ 230 barred claims that Reddit allowed posting of "sexually explicit videos and images of individuals under the age of 18"), *aff'd*, 51 F.4th 1137; *Doe #1*, 2023 U.S. App. LEXIS 10808, at *6 (same, for claims of "possession and distribution of child pornography under 18 U.S.C. §§ 2252A and 2255"); *Diez v. Google, Inc.*, 831 F. App'x 723, 724-25 (5th Cir. 2020) (same, for claims against Google for allegedly failing "to filter out certain images" of child pornography).

This case is no different. Plaintiff's claims seek to hold YouTube liable for the actions of its users (the Jacksons), and those claims are based on the theory that YouTube should have more vigorously exercised its prerogatives as a publisher by monitoring, removing, or restricting access to content created by those Defendants. Section 230 does not allow such claims.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1595.

In addition to her claim under § 2255, Plaintiff also asserts a claim based on the TVPRA, which allows civil claims based on violations of federal criminal statutes relating to sex trafficking. 18 U.S.C. § 1595. Plaintiff's § 1595 claim

against YouTube is based on a purported violation of § 1591, and it fails as a matter of law. First, in light of § 230, it is well settled that § 1595 claims against online service providers require allegations that the service provider itself criminally violated § 1591—which, as already discussed, Plaintiff does not and could not allege. Second, even putting aside § 230, Plaintiff does not plausibly allege that YouTube violated § 1595, which requires plausible allegations that the defendant knowingly participated in and benefitted from a venture that it had reason to know was engaged in a sex trafficking violation as to the plaintiff.

## A.   Plaintiff Fails to Get Through The FOSTA Gateway Because She Does Not Allege YouTube Violated § 1591.

Unlike claims under § 2255, certain civil claims under § 1595 are exempted from § 230. 47 U.S.C. § 230(e)(5)(A). But this carve-out, created in 2018 as part of the Fight Online Sex Trafficking Act ("FOSTA"), is narrow. By its terms, it applies only to claims under § 1595 "if the conduct underlying the claim constitutes a violation of section 1591 of that title." § 230(e)(5)(A).

Applying the plain language of the statute and its legislative history, courts—including most recently the Ninth Circuit—have repeatedly held that "for a plaintiff to invoke FOSTA's immunity exception, she must plausibly allege that the website's own conduct violated section 1591." *Reddit*, 51 F.4th at 1141; *accord Doe #1*, 2023 U.S. App. LEXIS 10808, at *4 (same); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1366 (S.D. Fla. 2022) ("FOSTA withdrew immunity from only those § 1595 claims in which the defendant's conduct violated the TVPRA's

criminal provision, 18 U.S.C. § 1591"); *Kik*, 482 F. Supp. 3d at 1251 ("FOSTA permits civil liability for websites only 'if the conduct underlying the claim constitutes a violation of section 1591.' And section 1591 requires knowing and active participation in sex trafficking by the defendants."); *J.B. v. G6 Hosp., LLC*, 2021 U.S. Dist. LEXIS 170338, at *39 (N.D. Cal. Sept. 8, 2021) (FOSTA "provides an exemption from immunity for a section 1595 claim if, but only if, the defendant's conduct amounts to a violation of section 1591."), *aff'd sub nom. J.B. v. Craigslist, Inc.*, 2023 U.S. App. LEXIS 10806 (9th Cir. May. 3, 2023); *G.G.*, 603 F. Supp. 3d at 641-42 (same). In short, a "complaint against a website that merely alleges trafficking by the website's users—without the participation of the website—would not survive." *Reddit*, 51 F.4th at 1142.

Here, however, as discussed above, Plaintiff does not even try to allege, nor could she, that YouTube itself engaged in a violation of § 1591. *See supra* section I.A.2. Without that, Plaintiff has no § 1595 claim against YouTube that can survive § 230. *See, e.g.*, *M.H.*, 2022 U.S. Dist. LEXIS 4543, at *18 ("Without allegations that Omegle had actual knowledge of, or overtly participated in the sex trafficking venture by John Doe, Plaintiffs fail to state a plausible sex trafficking claim that would escape CDA 230 immunity."); *L.H.*, 604 F. Supp. 3d at 1367 ("because L.H. did not allege in her complaint that craigslist [sic] itself violated § 1591, the Court finds her claim does not fall within the FOSTA exemption"); *Kik*, 482 F. Supp. 3d at 1251 ("Plaintiff has not alleged facts that would plausibly establish that Defendants knowingly participated in the sex

trafficking venture involving her; she alleges that Defendants knew that other sex trafficking incidents occurred on Kik. This does not satisfy FOSTA's requirement….").

## B.   Even Without Regard To FOSTA, Plaintiff Fails to State a Claim Against YouTube Under § 1595.

While the Court need go no further, Plaintiff's § 1595 claim would fail even without regard to FOSTA or § 230. The TVPRA authorizes civil liability only where a defendant "knowingly benefit[ted] … financially or by receiving anything of value" "from participation in a venture" that it "knew or should have known has engaged in an act in violation of this chapter," here, sex trafficking under § 1591. 18 U.S.C. § 1595(a). The Eleventh Circuit has definitively set out the elements a plaintiff must allege to state such a claim:

> We hold that Section 1595(a) should be applied according to its plain meaning: that is, to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Red Roof Inns*, 21 F.4th at 719. Plaintiff here falls well short of pleading these elements as to YouTube.

*First,* even assuming that YouTube entered into some "venture" with James Jackson via the monetization agreement for his YouTube channel (*see* Compl. ¶ 22), that was not a "sex trafficking" venture aimed at violations of § 1591. *See, e.g.*, *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169

(S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture."). The YPP monetization agreement is a standard-form agreement between YouTube and scores of different content creators to share advertising revenue associated with their videos. Compl. ¶¶ 21-26, 74-81; Ex. B. An agreement to share ad revenue on YouTube videos is ***not*** a venture to engage in sex trafficking—much less as to Plaintiff.

As discussed above, there is no allegation that the videos that Onision monetized on YouTube included any unlawful or sex trafficking content, any material depicting or relating to Plaintiff, or were the means that the Jacksons used to try to lure Plaintiff into a sexual relationship. Even crediting the allegations in the Complaint, therefore, the Jackson Defendants' efforts to "groom" Plaintiff occurred outside of YouTube and were not part of the limited video-advertising relationship YouTube had with Onision. As such, Plaintiff has "provided no plausible allegations that [YouTube] took part in the common undertaking of sex trafficking." *Red Roof Inns*, 21 F.4th at 726-27 ("These allegations may suggest that the franchisors financially benefited from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures.").

Courts have repeatedly rejected beneficiary claims under the TVPRA where the economic relationship between the defendant and an alleged sex trafficker was similarly disconnected from any actual trafficking activity. *See, e.g.*, *Geiss*, 383 F. Supp.3d at 169 ("The TWC Defendants undoubtedly benefited from H. Weinstein's continued employment at TWC…. The controlling question, however, is whether H. Weinstein provided any of those benefits to TWC *because* of TWC's facilitation of H. Weinstein's sexual misconduct. The FAC pleads no facts that would plausibly support such a conclusion."); *Noble*, 335 F. Supp. 3d at 524 (allegations that beneficiary defendant "benefited financially from Harvey Weinstein's promotion of films and other business-related activities in foreign commerce" insufficient to state a claim under §§ 1595 and 1591; "[w]hat is missing are factual allegations that link [defendant']s actions to Harvey's 2014 conduct toward [plaintiff]"); *G.G.*, 603 F. Supp. 3d at 648 ("The mere fact that Salesforce's software played a critical role in Backpage's expansion … is not enough to demonstrate Salesforce's own participation in any venture with Backpage.").

*Second*, Plaintiff has not alleged YouTube's knowledge of the relevant trafficking violation. The Eleventh Circuit has held that "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited —violated the TVPRA **as to the plaintiff**." *Red Roof Inns*, 21 F.4th at 725 (emphasis added); *accord A.D. v. Marriott Int'l, Inc.*, 2023 U.S. Dist. LEXIS 68592, at *12 (M.D. Fla. Apr. 19,

2023) (same); *G.G.*, 603 F. Supp. 3d at 646 (§ 1595 requires the plaintiff "to allege that the defendant knew (or should have known) about the ***specific*** sex trafficking venture—that is, the venture tied to the underlying § 1591 violation ***of the plaintiff***"). Here, however, there is no plausible allegation that YouTube had actual or constructive knowledge of the Jackson Defendants' alleged attempt to entice Plaintiff into a sexual relationship.

As discussed, the Complaint alleges nothing to suggest that YouTube knew or had any reason to know about the Jacksons' communications with Plaintiff, all of which happened outside of the YouTube platform. The most that Plaintiff alleges is that some users complained to YouTube about unrelated content on Onision's channel (videos supposedly "targeting teen users and their insecurities") and asked that YouTube revoke his YPP agreement. Compl. ¶¶ 111-118. But these videos and the complaints had nothing to do with Plaintiff or sex trafficking, and they did nothing to put YouTube on notice of any § 1591 violation—much less a violation as to Plaintiff herself.[5]

Such allegations fall far short of what is required to plead a TVPA claim. *See, e.g.*, *Doe v. Red Roof Inns, Inc.*, 2020 U.S. Dist. LEXIS 67142, at *9 (N.D. Ga. Apr. 13, 2020) (allegation of customer complaints about prostitution "insufficient to meet a known or should have known standard under either 18

---

[5] Plaintiff points to a documentary featuring her and her allegations about Onision, which was released several years after the relevant events. Compl ¶ 212. But she acknowledges that shortly after the documentary was released, YouTube demonetized Onision's channel. *Id.* ¶ 213.

U.S.C. §§ 1595(a) or 1591(a)")", *aff'd*, 21 F.4th 714; *G.G.*, 603 F. Supp. 3d at 647 ("because Plaintiffs have not alleged that Salesforce had actual or constructive knowledge of G.G.'s trafficking, they have not adequately pleaded that element of a § 1595 claim"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Ore. 2020) ("although Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants"); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA."); *cf. Kik*, 482 F. Supp. 3d at 1250 n.5 (plaintiff did not plausibly allege facts to "establish Defendants knew or should have known about her particular situation or that the Identified Kik Users were using Kik for sex trafficking").

## <u>CONCLUSION</u>

For these reasons, Plaintiff's claims against YouTube should be dismissed.

Dated: May 15, 2023          ZUCKERMAN SPAEDER LLP

By: */s/Nathan M. Berman*           
       NATHAN M. BERMAN
       FBN: 0329230
       nberman@zuckerman.com
       101 E. Kennedy Blvd., Suite 1200
       Tampa, Florida 33602
       Telephone: (813) 221-1010
       Facsimile: (813) 223-7961

       WILSON SONSINI GOODRICH & ROSATI
       Professional Corporation

       BRIAN M. WILLEN (*pro hac vice*)
       bwillen@wsgr.com
       BENJAMIN MARGO (*pro hac vice*)
       bmargo@wsgr.com
       1301 Avenue of the Americas, 40th Floor
       New York, NY 10019-6022
       Telephone:  (212) 999-5800

       AMIT Q. GRESSEL (*pro hac vice*)
       agressel@wsgr.com
       One Market Street
       Spear Tower, Suite 3300
       San Francisco, CA 94105
       Telephone: (415) 947-2000

       Attorneys for Defendants
       GOOGLE LLC and YOUTUBE, LLC

26

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), counsel for Defendants Google LLC and YouTube, LLC conferred with counsel for Plaintiff by telephone in a good faith effort to resolve the motion. Counsel for Plaintiff advised that Plaintiff opposes this motion.

*/s/ Nathan M. Berman*
Nathan M. Berman


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 15, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

*/s/ Nathan M. Berman*
Nathan M. Berman

27