# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

REGINA ALONSO,

    Plaintiff,

    v.

GOOGLE LLC, YOUTUBE LLC,
JAMES JACKSON, also known online as
"ONISION," and LUCAS JACKSON,
formerly known online as
"LAINEYBOT," "LAINEY" and "KAI,"

    Defendants.

CASE NO.: 5:23-CV-91-JA-PRL

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S MOTION TO DISMISS COMPLAINT

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................II

TABLE OF AUTHORITIES ..........................................................III

STATEMENT OF FACTS...............................................................1

ARGUMENT ..................................................................................2

**I.   SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFF'S CLAIMS.........................................................2**

   A.   Plaintiff's Claims Do Not Seek to Treat the YouTube Defendants as a Publisher or User of Third–Party Content ...............................................2

   B.   CDA 230 Does Not Apply Because The YouTube Defendants Had An Agency And Profit-Sharing Relationship with Onision Derived From The YPP Agreement.....................................................................................4

**II.   PLAINTIFF'S 18 U.S.C. § 2255 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6) ...........................................8**

   A.   The YouTube Defendants Have Vicarious or Secondary Liability Pursuant to 18 U.S.C. § 2255...........................................................................8

   B.   Plaintiff has Plausibly Alleged That the YouTube Defendants Committed the Alleged Predicate Acts for Violations of 18 U.S.C. §§2252A, 1591 and 2422 as well as their Civil Remedy 18 U.S.C. §2255 ...............................................12

**III. PLAINTIFF'S 18 USC §1595 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6) ........................................... 13**

   A.   (Element 1) Knowing Benefit .....................................................14

   B.   (Elements 2 and 3) Participation in a Venture that Violated the TVPRA as to Plaintiff .....................................................................................14

   C.   (Element 4) Defendants Had Actual or Constructive Knowledge ...............18

**CONCLUSION .................................................................. 20**

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................2

*Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731 (2020) ......................................10

*C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284 (M.D. Fla. 2021) .........5

*Calhoun v. Walden*, No. 3:22CV1947-TKW-ZCB, 2023 WL 2820076 (N.D.
    Fla. Feb. 8, 2023) ...............................................................................................7

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) ...............................3

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)...................13, 14, 15, 18

*Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012)...............................................................8

*Doe v. Internet Brands,* 824 F.3d 846 (9th Cir. 2016) ...............................................3, 4

*Doe v. Liberatore,* 478 F.Supp.2d 742 (M.D. Pa. 2007) ...............................................9

*Doe v. Liberatore,* 478 F.Supp.2d 742 (M.D.Pa. 2007) .............................................11

*Doe v. Peterson*, 784 F. Supp. 2d 831 (E.D.Mich. 2011).............................................6

*Doe v. Schneider,* No. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013) .......9, 11

*Dye v. Tamko Bldg. Prod., Inc.*, 275 F. Supp. 3d 1314 (M.D. Fla. 2017), aff'd,
    908 F.3d 675 (11th Cir. 2018)..............................................................................5

*Exxon Mobil Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546 (2005)..................................9

*Fla. Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536 (Fla. 3d DCA 1974)....................7

*Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146 (C.D. Cal. 2022) .................19, 20

*Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014)....................11

*Friends of Everglades v. So. Fla. Water Mgmt. Dist.*, 570 F.3d 1210 (11th Cir. 2009) .... 10

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), *cert. vacated and remanded*, 143 S. Ct. 1191 (2023) ...................................................................................... 3

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) ................ 3

*Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015) ......................... 11

*In re Hotel TVPRA Litig.,* No. 2:22-CV-1924, 2023 WL 3075851  (S.D.Ohio Apr. 25, 2023) ..................................................................................................... 9

*In re Jt. Pet. Filed by Dish Network, LLC,* 28 F.C.C.R. 6574 (2013) ............................ 11

*Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337 (S.D.Fla. 2012) . 9, 10, 11

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014)................... 3

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) .......................... 11

*Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007) ................................... 9

*M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041 (E.D.Mo. 2011) ......................................................................................................... 9

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ....... 18

*M.H. v. Omegle.com, LLC,* No. 8:21-CV-814-VMC-TGW, 2022 WL 93575 (M.D.Fla. Jan. 10, 2022) .......................................................................... 2, 14

*McIntyre v. Kavanaugh*, 242 U.S. 138 (1916) ............................................................ 6

*New York v. Ferber,* 458 U.S. 747 (1982) ................................................................. 12

*People v. Ferber*, 52 N.Y.2d 674 (1981), rev'd sub nom ........................................... 12

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) ..................................................... 18

*Smith v. Husband*, 376 F.Supp.2d 603 (E.D.Va. 2005) ...................................... 11, 13

*Stockwell v. U.S.*, 80 U.S. 531 (1871) ........................................................................ 6

*United States v. Copeland*, 820 F.3d 809 (5th Cir. 2016) .......................................... 12

*United States v. Townsend*, 630 F.3d 1003 (11th Cir. 2011) ....................................... 9

*Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842 (Fla. 2003) ..................... 5

*Wright v. Scales 925 Atlanta, LLC*, No. 1:16-CV-02425-LMM, 2017 WL 10378237
(N.D. Ga. Jan. 18, 2017) ......................................................................................... 6, 7

**Statutes**

18 U.S.C. § 1591(a) ................................................................................................... 8

18 U.S.C. § 2255 ....................................................................................................... 8

18 U.S.C. § 2422 ....................................................................................................... 8

18 U.S.C. §2255 ............................................................................................... 8, 9, 12

18 USC §1595 .......................................................................................................... 13

47 U.S.C. §230(c) ....................................................................................................... 2

**Other Authorities**

O.C.G.A. § 14-8-7 .................................................................................................... 6

*Restatement (Third) of Agency* § 1.01 (2006) .......................................................... 11

**Rules**

Rule 12(b)(6) ............................................................................................................. 2

## STATEMENT OF FACTS

Google is the parent company of YouTube (collectively the "YouTube Defendants") and has monetized the YouTube platform. (Doc. 1 ¶71). YouTube offers eligible creators the opportunity to join its YouTube Partnership Program ("YPP"). (Id. ¶ 74). The YPP requires a creator to enter a contractual relationship in which the creator develops and posts content, and the YouTube Defendants monetize their creations. (Id. ¶ 76). Both YouTube and the creator share any profit earned from this joint-venture. (Id.).

Defendant James Jackson ("Onision") joined the YPP and YouTube monetized him. (Id. ¶109). Around 2012, Onision and his spouse Lucas Jackson ("Lainey") (collectively the "Jackson Defendants") began working together to groom and lure underage girls through the Onision YouTube channels and forums as part of the YPP. (Id. ¶¶129, 133-36). YouTube was independently notified about the Jackson Defendants and their luring and enticing of children. Concerned citizens reached out to YouTube with complaints about Onision's grooming tactics and the harm he was causing minors. (Id. ¶¶114-18). Many requested that YouTube revoke Onision's YPP Agreement. (Id.). YouTube nonetheless continued the profit–sharing relationship with Onision and acquiesced the dangerous environment on its platform. (Id. ¶120).

Sometime after this, Onision's access to pools of victims via his YouTube channel allowed him to lure, entice, and recruit Plaintiff Regina Alonso to his own increasingly dangerous online environment. (Id. ¶¶150-51).

**ARGUMENT**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal at this early stage is inappropriate where plaintiff's complaint states "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## I. SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFF'S CLAIMS

The YouTube Defendants incorrectly claim that they are immune to Plaintiff's claims and that her complaint should be dismissed pursuant to Section 230 of the Communications Decency Act ("CDA 230"). Plaintiff's claims fall outside of CDA 230 for two reasons. First, Plaintiff's claims do not seek to treat the YouTube Defendants as a publisher or user of third–party content. Second, the YPP creates an agency / profit–sharing relationship with YouTube which changes the YouTube Defendant's duty and anchors liability which is outside the scope of CDA 230's immunity provisions.

### A. Plaintiff's Claims Do Not Seek to Treat the YouTube Defendants as a Publisher or User of Third–Party Content

CDA 230 only provides immunity from claims that seek to treat an ICS as a publisher or user of third–party content. 47 U.S.C. §230(c) ; *M.H. v. Omegle.com, LLC*, No. 8:21-CV-814-VMC-TGW, 2022 WL 93575, at *6 (M.D. Fla. Jan. 10, 2022);

*Gonzalez v. Google LLC*, 2 F.4th 871, 898–99 (9th Cir. 2021), *cert. vacated and remanded*, 143 S. Ct. 1191 (2023); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 409 (6th Cir. 2014). CDA immunity is not so broad as to apply any time a legal duty *might* relate to monitoring or other publication activities. Rather, immunity only attaches when the duty *requires* an internet company to monitor third–party content. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (city ordinance did not require the online platforms to monitor third–party content and thus fell outside of CDA 230 immunity); *Gonzalez*, 2 F.4th at 898–99 (plaintiff's revenue–sharing allegations were not directed to any third–party content that Google should have allegedly removed and therefore CDA 230 is not applicable).

Defamation treats a website as a publisher because the action is founded on the website hosting defamatory third–party content. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). In contrast, in the case of *Doe v. Internet Brands,* 824 F.3d 846, 848–49 (9th Cir. 2016)*,* the defendant learned—through sources other than by monitoring postings online—that two sexual predators were pretending to be talent agents on their website, modelmayhem.com. The predators then lured their victims to a location in Florida where they drugged them, raped them, and created pornography of the attacks for sale and distribution. In that case, the court held that CDA 230 immunity did not apply because the plaintiff did not seek to hold Internet Brands as the "publisher or speaker" of content on modelmayhem.com, but instead brought a claim for the defendant's failure to warn based on information that was not acquired through monitoring content. *Id.* at 851.

Here, Plaintiff's claims do not treat the YouTube Defendants as the publisher or speaker of any content. None of Plaintiff's claims require YouTube or Google to monitor Onision's content, nor does Plaintiff contend that any specific content or channel(s) required moderation by the YouTube Defendants. Like *Internet Brands*, Google and YouTube were made aware of Onision's risky and harmful conduct through alternative means—complaints made directly to the company. (Doc. 1 ¶ 114-18). Plaintiff's allegations seek to hold the YouTube Defendants accountable for their own conduct, not that of any third party.

### B. CDA 230 Does Not Apply Because the YouTube Defendants Had An Agency And Profit-Sharing Relationship with Onision Derived From The YPP Agreement

Unlike a typical third–party publisher that posts on the site but lacks any further connection to YouTube, Onision became an agent and contractor in a profit-sharing relationship with YouTube and was, in effect, hired and compensated to create and post content on the YouTube website as part of his YPP agreement.

#### *1. The YouTube Defendants' Had an Agency Relationship with Onision*

YouTube created a contractual relationship with Onision through their YPP. An agency relationship generally exists where (1) the principal acknowledges that the agent will act for him, (2) the agent accepts the undertaking, and (3) the principal has control over the actions of the agent. *Dye v. Tamko Bldg. Prod., Inc.*, 275 F. Supp. 3d 1314, 1321 (M.D. Fla. 2017), aff'd, 908 F.3d 675 (11th Cir. 2018). "When one considers an action based on actual agency, it is the *right* to control, rather than *actual*

control, that may be determinative." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003). As such, independent contractors can be agents. *Id.*

In *C.S.*, the Middle District of Florida determined that a franchisee was an agent of the franchisor Wyndham because the franchisor "exercised control over the means and methods of how those defendants conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing." *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021). This was enough to plausibly infer the existence of an agency relationship. *Id.*

This case is no different. YouTube created a contractual agreement with Onision and in exchange for creating and posting content, Onision was given a monetized YouTube platform in which Google's AdSense would place advertisements on his page to make both Onision and YouTube money. (Doc. 1 ¶¶77, 109-10, 116). Google AdSense had full decision making concerning the ads, including ad placement, revenue collection, and payment to the YPP Partner Onision. (Id. ¶¶ 24, 77-78, 116). In exchange, Onision agreed to follow and abide by the YouTube Terms of Service and Community Guidelines ("TOS"). (Id. ¶80). YouTube could revoke the profit–sharing relationship for any infraction of the TOS and therefore controlled Onision's profit–sharing, conduct, and what he could publish on the platform. (Id. ¶¶77-84).

As such, the facts meet the Florida Supreme Court's test for an agency relationship. ***First***, the YPP, offered by the YouTube Defendants acknowledges that Onision will act for it. Onision was posting content of his own creation, but within the confines of the TOS. (Id. ¶80). The YouTube Defendants not only offered payment in

exchange for his posting of content but were profit–sharing with Onision for that same content. Additionally, the TOS governs the content creator's conduct, both online and offline, placing YouTube in substantial control over the activities of Onision and other YPP partners. (Id. ¶214). **Second**, Onision accepted the undertaking by agreeing to join the YPP program. **Finally,** YouTube has the *right* to control Onision's conduct, both on and offline, and consequently, this right gives rise to an agency relationship.

### 2.  *Onision was in a Profit-Sharing Relationship with the YouTube Defendants*

"Generally, partners are individually liable for torts committed by their firm or other partners when they are acting within the scope of its business whether they personally participate or not." *Doe v. Peterson*, 784 F.Supp.2d 831, 844–45 (E.D.Mich. 2011) (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 139 (1916)); *see also Stockwell v. U.S.*, 80 U.S. 531, 547-48 (1871). "This is true even if the defendant has no knowledge of his partner's wrongdoing." *See McIntyre*, 242 U.S.at 140 (holding defendant personally liable for fraud his partners committed without his authority, knowledge, or consent).

Several factors are considered in determining whether two parties are in a partnership. Profit sharing alone is prima-facie evidence that two parties are partners. *Wright v. Scales 925 Atlanta, LLC*, No. 1:16-CV-02425-LMM, 2017 WL 10378237, at *3 (N.D. Ga. Jan. 18, 2017) (citing O.C.G.A. § 14-8-7). Further, Florida law recognizes that a partnership exists where one of the partners provides the labor, skill, or talent, and the other partner provides the investment or money. *Calhoun v. Walden*, No. 3:22CV1947-TKW-ZCB, 2023 WL 2820076, at *6 (N.D. Fla. Feb. 8, 2023) (citing *Fla.*

*Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536, 539 (Fla. 3d DCA 1974)). Further evidence of a partnership includes whether both parties are working toward a common enterprise for profit, if both names are on the business, and whether both parties have the right of control over the business. *Wright,* No. 1:16-CV-02425-LMM, at *3.

There is no question that the YouTube Defendants and Onision were acting as partners. The YouTube Defendants contracted with Onision to facilitate a profit–sharing relationship. (Id. ¶109). YouTube paid Onision 55% of ad revenue generated from the content he posted. (Id. ¶76). Onision agreed to post content within the restrictions of the TOS Agreement as part of the ordinary course of the partnership's business (Id. ¶80), and Google matched the content Onision created with advertisers, and decided what ad appeared, tracked the views, and recommended content through their algorithm. (Id. ¶24, 77-78, 109-10, 116). Furthermore, Google's non–neutral algorithm was designed to help its paid content creators, like Onision, maximize their shared profit by recommending videos and driving viewers to their pages. (Id. ¶18, 82-83). In other words, Onision created the content and was the labor or talent in the partnership, and Google placed ads on his YouTube page, driving viewers to the page with ads thereby monetizing the content as the investment or money side of the partnership. In this way, YouTube and Onision were in a true partnership (called the YouTube Partnership Program), where each contributed to the joint profit–seeking enterprise, and each shared in the profits generated from the same. They are two sides of the same coin – YouTube needs its content creators, like Onision, and Onision needed to get paid through monetization.

Most importantly, because this was a partnership, the normal CDA 230 caveat that YouTube does not need to monitor the content of its website does not apply. Onision was not an unknown, third–party posting on YouTube's website; rather, he was YouTube's business partner, was in a business venture with the YouTube Defendants, and YouTube and Google have liability for their partner's tortious conduct since it was committed in the ordinary course of the partnership's business.

## II.   PLAINTIFF'S 18 U.S.C. § 2255 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)

Plaintiff's 18 U.S.C. §2255 ("Masha's Law") claims are predicated on violations of three federal criminal statutes: (1) 18 U.S.C. § 2252A (Count III, Possession and Distribution of Child Pornography), (2) 18 U.S.C. § 1591(a) (Count IV, sex trafficking); and (3) 18 U.S.C. § 2422 (Count V, coercion and enticement). Section 2255 provides a civil remedy to any person who can show by a preponderance of the evidence that, while a minor, they were victim of one of numerous predicate criminal acts. *Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012). The YouTube Defendants claim that Plaintiff's allegations should be dismissed solely because section 2255 does not provide for vicarious or secondary liability. This is wrong.

### A. The YouTube Defendants Have Vicarious or Secondary Liability Pursuant to 18 U.S.C. § 2255

The YouTube Defendants baselessly claim that section 2255 does not permit vicarious or secondary liability and therefore the claims must be dismissed.[1] YouTube

---

[1] The YouTube Defendants gloss over the fact that the YouTube Defendants were not only in a secondary liability role; they were also partners and were profit–sharing with Onision.

incorrectly claimed that this matter is "well settled," yet districts across the nation are quite clearly split on this issue. Statutory construction clearly permits such secondary liability. *See Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337, 1340 (S.D.Fla. 2012) ; *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *7 (S.D.Ohio Apr. 25, 2023); *Doe v. Liberatore,* 478 F.Supp.2d 742, 756 (M.D. Pa. 2007); *Doe v. Schneider,* No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013) (relying on *Liberatore*); *M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011) (same).

Statutory interpretation must begin with the plain language of the statute. *United States v. Townsend*, 630 F.3d 1003, 1010 (11th Cir. 2011). Only if the statutory language is not clear should the court turn to extrinsic aids—such as legislative history—to clarify Congressional intent. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1205 (11th Cir. 2007) (citing *Exxon Mobil Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546 (2005)). Looking at the plain text, 18 U.S.C. §2255(a) ("Masha's Law") states:

> "Any person who, while a minor, was a victim of a violation of [§1591, 2242] and who suffers personal injury as a result of such violation … may sue in any appropriate United States District Court…"

The statute is silent on *who* may be sued and notably fails to restrict claims. The YouTube Defendants ultimately asked this Court to rewrite Masha's Law to suit their purpose. The YouTube Defendants would have this Court rewrite the statute to read:

> "Any person who, while a minor, was a victim of a violation of [§1591, 2242] and who suffers personal injury as a result of such violation … may sue **AN OFFENDER OR DIRECT PERPETRATOR** in any appropriate United States District Court…"

Had Congress intended such a limitation on who could be sued, it would have codified the same; it did not. *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1738 (2020) (courts must interpret a statute based on the ordinary meaning and not add or subtract words through judicial interpretation); *Friends of Everglades v. So. Fla. Water Mgmt. Dist.,* 570 F.3d 1210, 1224 (11th Cir.2009) (courts cannot add or subtract words from a statute when interpreting its meaning). As such, to limit liability to only the direct perpetrators of the predicate acts underlying §2255 would add language to the statute not codified by Congress. *Royal Caribbean*, 860 F.Supp.2d at 1341.

The YouTube Defendants wish to treat the criminal predicate acts as equivalent to 18 U.S.C. §2255 by demanding only the perpetrator of the underlying criminal act can be liable civilly. This argument again fails because Congress created the predicate criminal offenses and §2255 for different purposes and created Masha's law for remedial purposes. Symmetry in criminal and civil liability is not required. *Royal Caribbean*, 860 F.Supp.at 1340. "[W]hile §2255 requires that the victim sustain an injury "as a result" of a predicate criminal violation, that causation requirement does not mean that only the criminal offender may be held liable." *Id.* at 1343. Masha's Law only requires that the plaintiff prove, by a preponderance of the evidence, that a violation of the predicate act occurred – and it does not limit who can be liable for such a violation. *Smith v. Husband,* 376 F.Supp.2d 603, 613 (E.D.Va.2005), *Liberatore,* 478 F.Supp.2d at 756; *Schneider,* No. 08-3805 at *11; *Village Voice*, 809 F.Supp.2d at 1053-55.

As previously discussed *infra*, Onision was an agent and partner of the YouTube Defendants. (Doc. 1 ¶¶1, 22). Plaintiff has plausibly alleged such a relationship and therefore, "federal common law principles of agency" apply here. *In re Jt. Pet. Filed by Dish Network, LLC,* 28 F.C.C.R. 6574, 6574 (2013) ("[A] seller ... may be held vicariously liable under federal common law principles of agency for violations […] committed by third-party telemarketers."); *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) ("The DISH Network decision ... found that the seller may be vicariously liable for such violations under federal common law agency principles."). Vicarious liability need not require a formal agency relationship; it may also be based on principals of apparent authority and ratification. *Franza v. Royal Caribbean Cruises, Ltd*., 772 F.3d 1225, 1251 (11th Cir. 2014); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015). Ratification of the agent's acts occurs when the principal manifests assent or otherwise consents to the agent's actions. *Keating*, 615 F.App'x at 372 (citing *Restatement (Third) of Agency* § 1.01 (2006)).

The YouTube Defendants had an informal agency relationship with Onision. They also had apparent authority over Onision in that Google AdSense controlled all ad placement, revenue collection, and distribution of money to Onision. (Doc. 1 ¶¶23-24, 77-78, 116). Onision was bound by the YPP contract which controlled his conduct and the money he made. (Id. ¶¶80-81, 109). Most telling, when YouTube elected to demonetize Onision in 2021, it did so because of the Jackson Defendants' on and offline behavior. (Id. ¶¶213-14). While YouTube cut-off the Jackson Defendants'

ability to profit from his content, it did not cut off their own ability to profit from the same. (Id.).

### B. Plaintiff has Plausibly Alleged That the YouTube Defendants Committed the Alleged Predicate Acts for Violations of 18 U.S.C. §§2252A, 1591 and 2422 as well as their Civil Remedy 18 U.S.C. §2255

The YouTube Defendants incorrectly argue that Plaintiff's allegations should be dismissed because her claims do not plausibly allege that YouTube violated Masha's Law, 18 U.S.C. §2255. This argument fails as Plaintiff's claims sufficiently allege violations of Masha's Law and its predicates.

The YouTube Defendants were party to multiple violations of Masha's Law's predicate offenses which were committed against Plaintiff. Like the defendant in *New York v. Ferber,* 458 U.S. 747, 758 (1982), who was a bookstore proprietor and the so–called "third party" conduit for child pornography, the Defendants are liable to Plaintiff here. *People v. Ferber*, 52 N.Y.2d 674, 677 (1981), rev'd sub nom. *Ferber,* 458 U.S. In *United States v. Copeland*, 820 F.3d 809, 814 (5th Cir. 2016), the Fifth Circuit echoed this determination that "Congress can—and often does—reduce or eliminate scienter requiring knowledge of a minor victim's age in sex crimes." Plaintiff's allegations sufficiently support her claims that YouTube Defendants "ignored their statutory obligation not to benefit financially from a sex trafficking venture. *See* 18 U.S.C. §1591(a)(2) ("whoever knowingly ... benefits, financially or by receiving anything of value, from participation in a [sex trafficking] venture" shall be punished as provided in this section). *N.S. v. Rockett*, No. 3:16-CV-2171, 2018 WL 6920125, at *5

(D. Or. Oct. 19, 2018) (finding allegations of an attempted violation of a predicate sufficient to support 18 U.S.C. §2255 claims). Similarly, "Masha's Law does not require a defendant to be criminally convicted of the predicate offense, and it is enough to prove by a preponderance of the evidence that the defendant violated the enumerated statute." *Id.* at *8. *See Smith v. Husband,* 376 F. Supp. 2d 603, 611–12 (E.D.Va. 2005) (finding liability absent a criminal conviction). Plaintiff is entitled to discovery as to the YouTube Defendant's violations of Masha's Law predicates. For these reasons, Plaintiff's Masha's Law claims should not be dismissed.

### III.   PLAINTIFF'S 18 USC §1595 CLAIMS SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)

The YouTube Defendants argue that Plaintiff's claims do not plausibly allege that YouTube violated the TVPRA, 18 U.S.C. §1595. This argument fails.

In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the Eleventh Circuit held that to prevail on a civil claim under §1595, a plaintiff must plausibly allege facts that a defendant (1) knowingly benefited (2) from participation in a venture, (3) that the venture violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. *Id.* at 723-24. A federal circuit court has not yet determined how this beneficiary liability test applies to an internet company. *See M.H. v. Omegle.com, LLC,* No. 8:21-CV-814-VMC-TGW, 2022 WL 93575, at *1 (M.D.Fla. Jan. 10, 2022) (appeal pending on TVPRA claim against online company).

## A. (Element 1) Knowing Benefit

The first element requires the Court to address if the YouTube Defendants *knowingly benefited by receiving some value* for participation in the alleged venture, which is not disputed. *Red Roof,* 21 F.4th at 723. Plaintiff has plainly alleged that "Google monetizes its YouTube platform." (Doc. 1 ¶ 71). YouTube generated billions of dollars in revenue, of which a massive amount comes from advertising. (Id. ¶ 72). YouTube offers its creators the ability to join the YPP which allows creators to enter into a contractual, profit-sharing relationship with YouTube and Google for the ad revenue generated from their YouTube channel(s). (Id. ¶¶ 74-76, 92-93). Google uses its AdSense program to match individual ads to the YouTube website based on content and visitors to maximize profits. (Id. ¶¶ 78, 116). YouTube entered into the YPP profit-sharing contractual relationship with Onision for the ad revenue generated from his YouTube channels. (Id. ¶¶ 27-28).

## B. (Elements 2 and 3) Participation in a Venture that Violated the TVPRA as to Plaintiff

The second and third elements require the Court to determine if the YouTube Defendants knowing benefited from *participation in a venture* that violated the TVPRA as to the Plaintiff. *Red Roof,* 21 F.4th at 723. In the context of a civil suit, participation in a venture means that the defendants "took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725.

The YouTube Defendants argue that they did not participate in a venture because although they admit that YouTube engaged in a profit-sharing contractual

relationship with Onision, they argue that this agreement is not a venture to engage in sex trafficking. (Doc. 40, p. 22). This argument fails to properly analyze the TVPRA, nor does it take into account all of Plaintiff's well-plead facts.

A sex trafficking scheme is not a simple criminal act; like racketeering, it is a complex and multi-step process to locate, groom, and exploit a person and uses legitimate businesses in the process to execute the scheme. *Step one*, the trafficker needs to find, lure, entice, recruit, and solicit the potential victims. Frequently, online websites and platforms are used for this step – in part, because it provides the trafficker with a larger pool of potential victims to choose from, and in part, because conducting this step online provides the trafficker with more anonymity to avoid getting caught. *Step two*, the trafficker will groom and coerce the selected target to become their victim. This can involve promises, threats, violence, love, fraud, deceit, controlled substances, or any other means to prey on that victim's vulnerabilities. Children are particularly susceptible to grooming. *Step three,* the trafficker will exploit their victim. Frequently, hotels and motels are used for this step – the buyers of sex want the security of going to a hotel/motel instead of a private residence where they might get attacked, and the trafficker wants a location that can change easily if the police become aware of what is occurring.

At any stage of this scheme, a business can elect to profit by participating in that portion of the venture. Lawsuits have been brought around the U.S. against internet companies who engage in step one (luring and enticing), and separately, lawsuits have been brought against hospitality businesses, such as hotels and motels, that engage in

step three (exploitation). Although the YouTube Defendants are engaged in step one of Onision and Lainey's sex trafficking scheme, the cases analyzing the TVPRA's beneficiary claims under step three are instructive to the case at issue.

While *Red Roof* analyzes what would be needed to participate in a venture in the exploitation phase of a sex trafficking scheme (step 3), different evidence is needed to show what is needed in the luring and enticing phase of a sex trafficking scheme (step 1). Like a hotel operator, the YouTube Defendants operate YouTube, they determine who is eligible and with whom they choose to engage in a contractual profit-sharing relationship with, and they have a long-term, continuous business relationship with their YPP partners. Pursuant to the contract, YouTube agrees to profit share with its creator, and the creator agrees to abide by the YouTube TOS.

When YouTube was put on notice that its creator, Onision, was violating the TOS through the YouTube platform, it allowed a dangerous environment that was blatantly contrary to its TOS to exist on its platform and continue to lure in young teens. This occurred *prior* to Plaintiff Alonso using the platform, making the luring and enticing of Plaintiff foreseeable. (Doc. 1 ¶ 116). In contrast, Plaintiff alleged that VidCon, a convention for video creators, was also put on notice about Onision's luring and recruiting of impressionable and vulnerable children. (Id. ¶ 119). While YouTube elected to maintain a dangerous environment for the purpose of continued profits, VidCon reacted to the notice and complaints about Onision's conduct by cancelling Onision as a speaker at the VidCon convention. (Id. ¶ 122).

In addition, Plaintiffs allege that Onision's channels, through the help of his spouse, James Jackson ("Lainey"), were used as a tool that lured and enticed young children, such as Plaintiff, to begin following Onision and Lainey. (Id. ¶ 33). Onision and Lainey used the YouTube platform as a hunting ground to gain access to YouTube's large pool of young, impressionable children. (Id. ¶¶ 94, 117, 138, 142). Onision or Lainey then encouraged those children to move over to the Onision forums and promoted his forums in every, or almost every, video posted on YouTube in order to execute phase 2 of their sex trafficking scheme (grooming phase). (Id. ¶¶ 129, 132-35). Plaintiff was one of these such victims that the Jackson Defendants lured and enticed into danger through YouTube's platform. (Id. ¶¶ 150-51).

In 2019, the *M.A.* court found that "in the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.' *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019). *M.A.* went on to state that this comports with the First Circuit's holding in *Ricchio*, (*Id.*) which was adopted by the Eleventh Circuit in *Red Roof. Red Roof,* 21 F.4th at 725-26 (referencing *Ricchio v. McLean*, 853 F.3d 553, 556-558 (1st Cir. 2017)). Plaintiff plausibly alleged that the YouTube Defendants had a continuous business relationship, which could be deemed to be a tacit agreement. Plaintiff plausibly alleged that she was lured by the dangerous online environment that was created by Onision and the YouTube Defendants, in which Onision was targeting young minors and

luring them to his forums to begin grooming these children. Onision lured, enticed, and subsequently groomed Plaintiff.

The YouTube Defendants engaged in a common undertaking or enterprise involving risk and potential profit when they entered into a contractual relationship with Onision and agreed to profit share with him to make money. Through this relationship, they created a long-term and continuous business relationship. They also established a pattern of conduct that could be said to be a tacit agreement. Plaintiffs have adequately plead elements 2 and 3.

### C. (Element 4) Defendants Had Actual or Constructive Knowledge

The fourth element requires the Court to determine if the YouTube Defendants had actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff. *Red Roof,* 21 F.4th at 723. The YouTube Defendants inaccurately argue that Plaintiff has not alleged actual or constructive knowledge.

In *Fleites v. Mindgeek*, the plaintiff sued a website run by Mindgeek and the credit card company, Visa, arguing that Visa's was liable for their participation in the Mindgeek sex trafficking operation. In regard to knowledge, the Court stated:

> If Visa knew MindGeek's sites contained a wealth of child porn and that MindGeek regularly placed ads alongside its videos, facts that are either expressly alleged or clearly implied in the [complaint], then it knew that MindGeek was regularly committing violations of section 1591(a)(2) by participating in hundreds or thousands of sex trafficking ventures and financially benefiting from such participation. With such knowledge, Visa continued to grant MindGeek the means to financially benefit from its participation in sex trafficking ventures: the Visa payment network. It does not matter that Visa did not know who the eventual victims or primary traffickers would be or whether Visa interacted with or knew of Plaintiff, her videos, or her traffickers. MindGeek's violation of section

> 1591(a)(2), and Plaintiff's resulting harm, were natural consequences of Visa's alleged ***knowing decision*** to provide the means through which MindGeek could monetize child porn videos, like those featuring Plaintiff.

*Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146, 1163 (C.D. Cal. 2022) (emphasis added). Like Visa, the YouTube Defendants were on notice of the ongoing luring and enticing of children through Onision's channels yet continued to give him the means and encouragement to continue – they were paying him to do so as part of their YPP contract. (Doc. 1 ¶¶ 95, 114-18, 120).

Additionally, YouTube maintained expansive control over Onision. YouTube Defendants held the power to demonetize any YPP Partner that broke their TOS. (*Id.* ¶¶ 81, 84). In *Fleites*, the court rejects Visa's argument that they are not liable because they are not involved in Mindgeek's day-to-day operations and Visa does not control how Mindgeek runs its website. The Court instead found that Visa has substantial control over Mindgeek because Visa determines what type of content is "fair game for its payment network." *Fleites*, 617 F.Supp.3d at 1156. After Mindgeek was publicly outed for knowingly hosting illegal content, Visa suspended Mindgeek's merchant privileges, resulting in Mindgeek's removal of a substantial number of illegal videos. *Id.* The Court determined that Visa made the choice to allow Mindgeek to be a merchant on its platform, despite knowing Mindgeek engaged in illegal activity. *Id.* at 1157. Regarding Visa's liability, the Court stated "[w]hen MindGeek crosses the line . . . Visa crack[ed] the whip and MindGeek respond[ed] vigorously.[] Yet, here is Visa,

standing at and controlling the valve, insisting that it cannot be blamed for the water spill because someone else is wielding the hose." *Id.* at 1156-57.

Likewise, when Google and YouTube became aware that Onision was violating the TOS, was posting harmful and dangerous content, and was luring and enticing children, (Doc. 1, ¶¶111-118), this was enough to place the YouTube Defendants on notice and provide constructive knowledge of the criminally dangerous environment Onision created through use of the YouTube platform. The YouTube Defendants should have demonetized Onision when this came to their knowledge instead of continuing to profit from his luring and enticement of children. When they finally did demonetize Onision in 2021, they did so because Onision had violated the YPP Partner agreement and stated that he had engaged in behavior on or off platform that causes harm to the YouTube community. (Id. ¶¶213-16). The YouTube Defendants, like Visa, controlled the money flow for the Jackson Defendants, but claim they cannot be blamed for the environment they paid him to create.

Plaintiff plausibly alleged that the YouTube Defendants were aware that Onision lured and enticed children on and offline and that they nonetheless continued to profit-share with him from his harmful content. YouTube knowingly allowed the dangerous environment on their platform to continue. As such, they had constructive and actual knowledge of the harms and risks Onision created with YouTube.

## CONCLUSION

For all the above reasons, this court should Deny the Defendant's Motion to Dismiss and in the alternative grant Plaintiff leave to amend her Complaint.

DATED: June 7, 2023                     Respectfully Submitted,

                                        */s/ Lisa D. Haba*
                                        Lisa D. Haba
                                        **THE HABA LAW FIRM, P.A.**
                                        1220 Commerce Park Dr., Suite 207
                                        Longwood, FL 32779
                                        Telephone: (844) 422-2529
                                        lisahaba@habalaw.com

                                        */s/ Jennifer Freeman*
                                        Jennifer Freeman
                                        James R. Marsh
                                        Margaret E. Mabie
                                        **MARSH LAW FIRM PLLC**
                                        31 Hudson Yards, 11th Floor
                                        New York, New York 10001
                                        Telephone: (212) 372-3030
                                        jenniferfreeman@marsh.law
                                        jamesmarsh@marsh.law
                                        margaretmabie@marsh.law

                                        *Attorneys for Plaintiff*