# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# Ocala Division

REGINA ALONSO,

   Plaintiff,

v.

GOOGLE LLC, YOUTUBE LLC;
JAMES JACKSON, also known online as
"ONISION," and LUCAS JACKSON,
formerly known online as
"LAINEYBOT," "LAINEY" and "KAI,"

   Defendants.

Case No.: 5:23-cv-00091-JA-PRL

**REPLY IN FURTHER SUPPORT
OF MOTION TO DISMISS BY GOOGLE LLC AND YOUTUBE, LLC**

## TABLE OF CONTENTS

**Page**

I.     PLAINTIFF CANNOT SAVE HER §2255 CLAIMS ........................................... 1

     A.     YouTube Did Not Criminally Violate §2422 or §1591 .......................... 1

     B.     The Jacksons Were Not YouTube's Agents Or Partners ..................... 3

     C.     Plaintiff Cannot Evade Section 230 ..................................................... 5

II.     PLAINTIFF CANNOT SAVE HER CLAIM UNDER §1595 ........................... 6

Largely ignoring the established law that defeats her claims, Plaintiff asserts that YouTube is *vicariously* liable for the actions of the Jackson Defendants. But *respondeat superior* liability has no place here. That James Jackson ("Onision") accepted a standard-form revenue-sharing agreement did not make him YouTube's all-purpose "agent" or a co-owner of YouTube's business—much less bring the Jacksons' alleged off-platform sexual misconduct within the scope of any conceivable agency relationship with YouTube. Nor can Plaintiff avoid Section 230, which bars any effort to hold YouTube liable for hosting Onision's videos— third-party content that, while not remotely sufficient to support a sex trafficking claim against YouTube—is what Plaintiff says "lur[ed] and entic[ed]" her to first reach out to the Jackson Defendants. Opp'n (ECF No. 52) at 16, 20.

## I.   PLAINTIFF CANNOT SAVE HER §2255 CLAIMS.

### A.   YouTube Did Not Criminally Violate §2422 or §1591.

Plaintiff's Section 2255 claims (Counts IV-V) fail because YouTube did not violate the underlying criminal statutes at issue. Mot. (ECF No. 40) at 10-15. Plaintiff references §2422 just once in section heading II.B (Opp'n at 12), effectively conceding that she has no claim based on this statute. As for §1591, Plaintiff offers no substantive response (Opp'n at 12-13) to the established law that liability requires "actual knowledge and overt participation in a sex trafficking venture" by YouTube. *M.H. v. Omegle.com, LLC*, 2022 U.S. Dist. LEXIS 4543, at *8 (M.D. Fla. Jan. 10, 2022); *see* Mot. at 11-12.

Instead, Plaintiff argues that YouTube should be vicariously liable for the

1

alleged wrongdoing of the Jackson Defendants. But §2255 does not authorize vicarious liability. Mot. at 8-9. Disregarding the authority cited in YouTube's motion, Plaintiff argues that because §2255(a) "is silent on *who* may be sued," therefore "it does not limit who can be liable." (Opp'n at 9-10). This flouts the established principle that "statutory silence on the subject of secondary liability means there is none." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*). Plaintiff's cases (Opp'n 9-10) do not suggest otherwise. Indeed, the only case she cites that allowed a vicarious claim under §2255 to proceed did so based on idiosyncratic circumstances not applicable here, *i.e.,* a "principle of federal maritime law" that makes a cruise ship carrier strictly liable if its crew assaults passengers. *Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012). And in half-heartedly invoking "federal common law principles of agency," Opp'n at 11, Plaintiff's only support is an FCC regulatory decision interpreting a differently worded statute. *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6584 (F.C.C. May 9, 2013). That decision says nothing about §2255, much less overcomes the consensus rejecting vicarious liability under this provision. *See Doe v. City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33-34 (S.D.W. Va. Aug. 22, 2022).[1]

---

[1] Plaintiff's cases discuss possible claims under §2255 based on the criminal *aiding and abetting* statute, though both rejected the claims at issue. *Doe v. Liberatore*, 478 F. Supp. 2d 742, 756-57 (M.D. Pa. 2007); *Doe v. Schneider*, 2013 U.S. Dist. LEXIS 140274, at *34 (E.D. Pa. Sept. 30, 2013). But Plaintiff does not claim that YouTube aided and abetted the Jackson Defendants. Nor could she, as she has no allegations that YouTube "knew the offense was being committed" and "acted with the intent to facilitate it." *Liberatore*, 478 F. Supp. 2d at 756-757; *accord Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1223 (2023).

2

## B. The Jacksons Were Not YouTube's Agents Or Partners.

Even if vicarious liability was available, Plaintiff's claims would fail. To begin, there is no agency relationship here. While Onision (though not Lainey) accepted YouTube's standard-form revenue-sharing agreement (Opp'n 4-6), nothing in that agreement suggests that he (much less Lainey) thereby became YouTube's agent. Mot. at 9 n.3; ECF 40-3 at 3 (YPP). It is black-letter law that a "preexisting relationship is not sufficient to make one party the agent for the other." *van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 572 (2003).

Plaintiff alleges no facts suggesting that the Jacksons "represent[ed]" YouTube "in dealings with third persons," Cal. Civ. Code § 2295, or satisfied any of the other requirements of agency, *van't Rood*, 113 Cal. App. 4th at 570-73. "The existence of a true agency relationship depends on the degree of control exercised by the principal." *Dorse v. Armstrong World Indus., Inc.*, 513 So.2d 1265, 1268 n.4 (Fla. 1987)). That requires "a comprehensive and immediate level of 'day-to-day' authority." *ING Bank v. Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010). There is nothing like that here, nor anything akin to the profit-sharing and day-to-day control exerted by the franchisor over franchisees in *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021) (cited in Opp'n at 5).

Plaintiff asserts that YouTube "controlled all ad placement, revenue collection, and distribution of money to Onision." Opp'n at 11. Even if true, that does not show any control by YouTube over Onision's actions. There is no allegation that YouTube directed Onision to create or post any videos—or gave the

3

Jacksons any instructions about who they should communicate with. At most, YouTube and Onision had the kind of "arms-length commercial relationship" that "does not create an agency relationship." *Ratha v. Phatthana Seafood Co.*, 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017).

Nor were Onision and YouTube in a legal partnership (Opp'n at 6-8). Colloquial uses of the term "partner" do not matter here; a "partnership" is defined as "an association of two or more persons to carry on as coowners a business for profit." Cal. Corp. Code § 16101(9); *accord* Fla. Stat. Ann. § 620.8101(7). Plaintiff acknowledges that YouTube paid Onision a portion of "ad revenue generated from the content he posted." Opp'n at 7. But *revenue*-sharing is not *profit*-sharing, and it does not make Onision a co-owner of YouTube. *See* Cal. Corp. Code § 16202(c)(2) ("The sharing of gross returns does not by itself establish a partnership."). And Plaintiff does not suggest that revenue-sharing afforded Onision any of the rights of partnership or any fiduciary duties. *See* Cal. Corp. Code § 16403, 16404(b)-(c).

But even if Onision was somehow YouTube's "agent" or "partner," YouTube could only be vicariously liable if his allegedly wrongful conduct occurred "within the scope" of the agency relationship, Rest. 3d of Agency, § 7.07(1), or "in the ordinary course of business of the partnership or with authority of the partnership," Cal. Corp. Code § 16305(a); *accord Bartenwerfer v. Buckley*, 143 S. Ct. 665, 676 (2023). It clearly did not. The relevant conduct here is *Lainey*'s alleged grooming efforts. Plaintiff never claims that Lainey was YouTube's agent—let alone that either of the Jacksons was acting within the scope of Onision's advertising

4

agreement by trying to entice Plaintiff into an improper sexual relationship.

Indeed, "courts have rarely held [that] an employee's sexual assault or sexual harassment of a third party falls within the scope of employment." *Daza v. L.A. Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268 (2016); *see, e.g.*, *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 301 (1995) (hospital not vicariously liable when its ultrasound technician sexually molested a patient during an examination; molestation not "fairly attributable to work-related events or conditions"); *Liberatore*, 478 F. Supp. 2d at 758. This case is even clearer. The alleged misconduct did not take place on YouTube's premises; was not "engendered" by the revenue-sharing agreement; and had no "foreseeable" causal nexus with any work that Onision even arguably performed for YouTube's benefit.

### C. Plaintiff Cannot Evade Section 230.

Plaintiff does not dispute that YouTube provides an "interactive computer service" or that the content posted by Onision on YouTube was not "created or provided" by YouTube. Mot. at 16. Instead, Plaintiff attempts to avoid Section 230 with a faulty analogy to *Doe v. Internet Brands*, 824 F.3d 846, 848-49 (9th Cir. 2016). Opp'n at 3-4. *Internet Brands* involved a claim that a website failed to warn its users (models) about wrongdoers who used the site to obtain models' contact information, and stalked and sexually assaulted them. *Id.* at 848. That claim fell outside Section 230 because the wrongdoers had not posted *any* content on the defendants' website—and thus liability had nothing to do with hosting or failing to remove potentially harmful content. The plaintiff did not "claim to have been lured by any posting that Internet Brands failed to remove"—or that

5

the defendant should have "remove[d] any user content." *Id.* at 851.

This case is entirely different. Plaintiff's only hook for suing YouTube is that it allegedly *provided a platform* for Onision, where *his videos* allegedly lured Plaintiff to his spouse Lainey, supposedly as the first step in an elaborate grooming scheme. Plaintiff insists that she does not "contend that any specific content or channel(s) required moderation by the YouTube Defendants." Opp'n at 4. But that ignores her own allegations that Onision's posting of popular videos on YouTube gave him the means "to form relationships with underage girls" (Compl. ¶ 29), and that YouTube should have "remov[ed] him from the platform." *Id.* ¶ 215; *accord* Opp'n at 16 (faulting YouTube for allowing Onision to post videos that "created a dangerous environment for children online"). Though that is not nearly enough to assert a viable claim against YouTube, it is the very fact pattern that *Internet Brands* makes clear falls within Section 230's heartland. 824 F.3d at 851-52; Mot. at 16-17; *accord Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019) (distinguishing *Internet Brands*); *L.W. v. Snap Inc.*, 2023 U.S. Dist. LEXIS 97798, at *23-25 (S.D. Cal. June 5, 2023) (same).

## II. PLAINTIFF CANNOT SAVE HER CLAIM UNDER §1595.

Plaintiff does not dispute that the exception to Section 230 for claims under §1595 applies only where the service provider *itself* criminally violated §1591. Mot. at 19-21. That alone defeats any §1595 claim here. *See supra*. But Plaintiff has no viable claim under §1595 anyway. Mot. at 21-25; *cf.* Opp'n at 13-20.

*First*, none of Plaintiff's arguments come close to showing that YouTube

6

embarked with the Jacksons on a "common undertaking of sex trafficking." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 726-27 (11th Cir. 2021). Any relationship between YouTube and Onision was limited to his "popular[]" if "controversial" videos—none of which are alleged to have been illegal or to have been overtly directed to sex trafficking. Compl. ¶¶ 14, 19-20. Sharing revenue on such videos was not in any way a *sex trafficking* venture.

*Second*, Plaintiff has not alleged that YouTube knew about the Jacksons' alleged effort to traffic her. Her suggestion (Opp'n at 20) that YouTube had "constructive knowledge of the criminally dangerous environment Onision created" is not enough under binding Eleventh Circuit precedent, which requires "actual or constructive knowledge that the venture … violated the TVPRA *as to the plaintiff*." *Red Roof Inns*, 21 F.4th at 725 (emphasis added); Mot. at 23.[2]

Plaintiff's claims fail as a matter of law and should be dismissed.

---

[2] Plaintiff relies on *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022) (Opp'n at 18-19), which does not help her—even assuming (dubiously) that it remains good law. *See Does v. Reddit, Inc.*, 51 F.4th 1137, 1141, 1145-46 (9th Cir. 2022), *cert. denied*, 2023 U.S. LEXIS 2249 (May 30, 2023); *Doe v. Twitter, Inc.*, 2023 U.S. App. LEXIS 10808, at *5 (9th Cir. May 3, 2023). *Fleites* allowed a beneficiary claim against MindGeek (a pornography website) based on allegations that it knowingly monetized specific instances of child pornography depicting the plaintiff, after "Plaintiff quite literally told MindGeek herself that she was a minor in her videos." 617 F. Supp. 3d at 1160-61. Plaintiff alleges nothing like that. Moreover, *Fleites* dismissed a §1595 beneficiary claim against Visa (Mindgeek's credit card processor) because the allegations "do not reflect that Visa had any knowledge—constructive or otherwise—of Plaintiff, her videos, or her age in the videos." *Id.* at 1161-62. So too here, Plaintiff points to no allegations plausibly suggesting that YouTube had any reason to know that the Jacksons were engaged in sex trafficking at all, much less trying to illegally groom her. While *Fleites* allowed a *conspiracy* claim against Visa under Section 1594(c), Plaintiff has not even tried to make such an allegation here.

Dated: July 28, 2023          ZUCKERMAN SPAEDER LLP

By: */s/Nathan M. Berman*
NATHAN M. BERMAN
FBN: 0329230
nberman@zuckerman.com
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
Telephone: (813) 221-1010
Facsimile: (813) 223-7961

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

BRIAN M. WILLEN (*pro hac vice*)
bwillen@wsgr.com
BENJAMIN MARGO (*pro hac vice*)
bmargo@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800

AMIT Q. GRESSEL (*pro hac vice*)
agressel@wsgr.com
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

*/s/ Nathan M. Berman*
Nathan M. Berman
